EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Pedro González Carrasquillo | 2005 TSPR 78 <br><br> 164 DPR _____ |

Número del Caso: CP-1999-1


Fecha: 24 de mayo de 2005


Oficina del Procurador General:

                        Lcda. Iris M. Barreto Saavedra
                        Procuradora General Auxiliar

 Abogado del Peticionario:

                        Por Derecho Propio


Materia: Conducta Profesional
        (La suspensión será efectiva el 31 de mayo de 2005 fecha
        en que se le notificó al abogado de su suspensión
        inmediata.)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Pedro González Carrasquillo

CP-1999-1

PER CURIAM

San Juan, Puerto Rico, a 24 de mayo de 2005

El Lcdo. Luis Francisco Antonetti Zequeira y la Lcda. Ivette De Luna, presentaron ante este Tribunal un escrito en el cual alegaron que el Lcdo. Pedro González Carrasquillo [1] había incurrido en una conducta poco profesional, irrespetuosa y antiética durante la etapa de descubrimiento de prueba, en específico, en la toma de deposiciones a la parte demandante, en el caso Miriam Ayala Ramos v. G.H. Bass Caribbean Inc., Civil Núm. CAC97-0274, dilucidándose ante

---

[1] El Lcdo. Pedro González Carrasquillo fue admitido al ejercicio de la abogacía el 17 de noviembre de 1981 y al ejercicio del notariado el 15 de diciembre de 1981.

el Tribunal de Primera Instancia, Sala Superior de Arecibo. A esos efectos, solicitaron la paralización de los procedimientos del referido caso ante el foro primario, y a su vez, una vista evidenciaria para dilucidar los planteamientos esbozados.

Emitimos Resolución concediéndole término al Lic. González Carrasquillo para que expresara su posición en cuanto a la moción presentada[2], y a la misma vez referimos dicho escrito al Procurador General[3] para que realizara una investigación y nos sometiera el correspondiente informe. Asimismo, en auxilio de nuestra jurisdicción, ordenamos la paralización de los procedimientos en el caso de Miriam Ayala Ramos v. G.H. Bass Caribbean Inc., ante, hasta que otra cosa dispusiéramos.

El Procurador General presentó ante este Tribunal un informe con sus hallazgos y recomendaciones el 13 de noviembre de 1998. Examinado el informe, el 11 de diciembre de 1998 emitimos una Resolución ordenando que se presentara

---

[2] El Lcdo. González Carrasquillo nunca compareció en cumplimiento de la referida Resolución.

[3] El Lcdo. Luis Francisco Antonetti ya había presentado una queja en contra del Lcdo. Pedro González, el 19 de marzo de 1998, ante el Colegio de Abogados por la conducta de éste último en una deposición tomada el 18 de marzo de 1998 en el mismo caso. El 20 de marzo de 1998, el entonces Presidente del Colegio de Abogados, Lcdo. Manuel Fermín Arraiza, le refirió la queja a la Oficina del Procurador General ya que había estado presente en la deposición donde alegadamente el Lcdo. González Carrasquillo había incurrido en la conducta que se le imputa en la queja presentada. El 27 de abril de 1998 la Oficina del Procurador General le envió una copia de la queja al Lcdo. González Carrasquillo; no obstante, éste nunca la contestó.

la correspondiente querella disciplinaria contra el Lcdo. Pedro González Carrasquillo.

En virtud de lo anterior, el Procurador General presentó la querella ante este Tribunal el 12 de febrero de 1999. En la referida querella se formulan tres cargos contra el Lcdo. González Carrasquillo, todos relacionados con su comportamiento como abogado de la parte demandante en el caso Myriam Ayala Ramos v. GH Bass Caribbean, ante.

En el primer cargo se le imputa haber violado el Canon 38 del Código de Ética Profesional durante el curso de una deposición, tomada el 18 de marzo de 1998, en el referido caso, al haberle sacado la lengua a la Lcda. Ivette de Luna[4], y al haber amenazado con "arrancarle la cabeza" al Lcdo. Luis F. Antonetti[5]. En el segundo cargo se le imputa haber violado el Canon 9 del Código de Ética Profesional por haber desobedecido las instrucciones del juez asignado al referido caso, Hon. Eliseo Gaetán y Mejías, respecto a que no debía interferir con el testimonio de la parte demandante durante una deposición, para sugerirle las contestaciones o para instruirla que no contestara las preguntas. En el tercer cargo se le imputa haber ejercido ilegalmente la profesión de abogado, al presentar seis (6) mociones en el caso Myriam Ayala Ramos v. GH Bass Caribbean, ante, entre el 12 de junio y el 9 de octubre de

---

[4] La Lcda. Ivette De Luna estaba actuando como notario en la deposición del 18 de marzo de 1998.

[5] El Lcdo. Antonetti estaba representando a la parte demandada.

1998, mientras se encontraba suspendido del ejercicio de la profesión por no haber pagado la cuota del Colegio de Abogados.

El Lcdo. González Carrasquillo contestó la querella presentada por el Procurador General. En la misma solicitó la desestimación de la querella ya que las deposiciones sometidas como prueba documental no eran admisibles toda vez que el juez de instancia había anulado las mismas. Asimismo, argumentó que su comportamiento en la deposición del caso de Myriam Ayala Ramos v. GH Bass Caribbean, ante, hacia el Lcdo. Antonetti, había sido provocado por el trato ofensivo hacia él por parte de ese mismo abogado.

Emitimos Resolución designando al Lcdo. Angel Hermida como Comisionado Especial en este caso. Éste citó a las partes a una reunión informal, a los fines de fijar un calendario de trabajo, la cual se celebró el 5 de agosto de 1999. En dicho día el abogado querellado solicitó que se dejara sin efecto la orden de paralización del caso Myriam Ayala Ramos v. GH Bass Caribbean, ante. Luego de estudiar los documentos pertinentes y de dar a los abogados de la otra parte en el referido caso la oportunidad de expresarse, el comisionado especial Hermida le recomendó a este Tribunal que la orden paralizando los procedimientos fuese dejada sin efecto. Este Tribunal aceptó dicha recomendación, y dejó sin efecto la paralización decretada.

Luego de varios trámites e incidentes procesales, finalmente, la vista en su fondo se celebró el 7 de febrero

de 2002. A la misma compareció la Lcda. Iris M. Barreto en representación de la Oficina del Procurador General. El querellado compareció por derecho propio. Por acuerdo de las partes, el caso quedó sometido por cierta evidencia documental que había sido estipulada el día de la conferencia con antelación a la vista, y otra evidencia documental presentada durante la vista en su fondo. No se recibió ninguna evidencia testifical.

Luego de celebrada la vista, el 8 de julio de 2003, el comisionado especial Hermida emitió su informe. Un examen del mismo demuestra que las determinaciones de hechos que realizara el comisionado especial confirman lo expresado por el Procurador General, en el informe que dicho funcionario radicara ante este Tribunal.

Habiendo quedado sometido el caso ante nuestra consideración, y contando con el informe del Comisionado Especial, y los alegatos del Procurador General y del abogado querellado, procedemos a resolver.

I

En cuanto al primer cargo de la querella, según surge del informe del comisionado especial, durante el transcurso del caso Miriam Ayala Ramos v. G.H. Bass Caribbean Inc., ante, y en específico, durante los trámites de descubrimiento de prueba, surgió cierta tensión entre el Lcdo. González Carrasquillo y el Lcdo. Antonetti. Esa tensión llegó a su punto culminante el 18 de marzo de 1998,

mientras el Lcdo. Antonetti tomaba una deposición a la demandante en el referido caso, la Sra. Miriam Ayala.

De la transcripción de la deposición, del 18 de marzo de 1998, surge que todo comenzó cuando el Lcdo. González Carrasquillo <u>interrumpió en un sinnúmero de ocasiones</u> la deposición de la demandante tomada por el Lcdo. Antonetti para sugerirle las contestaciones a su clienta u objetarlas e indicarle que no contestara las preguntas. Ante esta situación, la Lcda. Ivette De Luna, que estaba fungiendo en ese momento como notaria en la deposición, le indicó al Lcdo. González Carrasquillo que no podía sugerirle las contestaciones a su cliente. El intercambio entre los abogados surgió de la siguiente manera:

LCDA. DE LUNA:

El récord debe reflejar que ésas no fueron las instrucciones que dio el honorable juez.

LCDO. GONZÁLEZ:

¿Y cuáles fueron? Y que el record refleje que usted pertenece al mismo bufete... contrario.
LCDA. DE LUNA:

Pero fui testigo de la conversación, que...

LCDO. GONZÁLEZ:

No me importa que sea testigo, pero...

LCDA. DE LUNA:

...se iban a levantar las objeciones y que la testigo tenía que contestar las preguntas...

LCDO. GONZÁLEZ:

Cuando yo la asesore...

LCDA. DE LUNA:

...y usted iba a tener un turno de contrainterrogatorio. No... sin asesoría, específicamente ...

LCDO. GONZÁLEZ:

¿Y pa'qué yo estoy aquí, pa'estar en una pared?

LCDA. DE LUNA:

Esa fue una argumentación que usted le expuso al honorable juez y él tomó su determinación.

LCDO. ANTONETTI:

Licenciado, ¿pero por qué usted le sacó la lengua a la licenciada?

LCDO. GONZÁLEZ:

Por molestarla, de broma...

LCDO. ANTONETTI:

Pero eso es una falta de respeto, licenciado...

LCDO. GONZÁLEZ:

¿Cuántas veces usted me ha faltado el respeto a mí?

LCDO. ANTONETTI:

Yo nunca le he faltado el respeto a usted, licenciado...

LCDO. GONZÁLEZ:

Já...

LCDO. ANTONETTI:

Nunca.

LCDO. GONZÁLEZ:

Vuelve a faltármelo pa'que tú veas.

LCDO. ANTONETTI:

¿Qué usted va hacer, licenciado?

LCDO. GONZÁLEZ:

_Arrancarte la cabeza si tú me vuelves a faltar el respeto._ (énfasis suplido).

De la transcripción anterior surge claramente que el Lic. González Carraquillo hizo las expresiones que se le imputan en la querella. _El abogado querellado, en su comparecencia, admitió haber hecho esas expresiones._ No obstante, sostiene que con esa expresión no estaba proponiendo literalmente el recurrir a la violencia, pues el Lcdo. Antonetti es una persona físicamente mucho más grande que él. Argumenta, por el contrario, que se trató meramente de una reacción no premeditada a lo que él consideró tratamiento previo, reiteradamente ofensivo, de parte del Lcdo. Antonetti hacia él.

Concretamente, tanto durante su argumento el día de la vista como en escritos presentados en diversas etapas de este caso, el querellado menciona la forma en que, durante la etapa de descubrimiento de prueba del caso, el Lcdo. Antonetti contestó un requerimiento de admisiones, negándose a contestar muchas preguntas, tildándolas repetidamente de "incoherentes." [6] Señala también como

---

[6] Del expediente del caso surge que es cierta la alegación del abogado querellado de que el Lcdo. Antonetti había contestado ciertas preguntas de un requerimiento de admisiones tildándolas de incoherentes. De una lectura del requerimiento de admisiones que el Lcdo. González Carrasquillo le envió al Lcdo. Antonetti podemos notar que muchas de las preguntas efectivamente son difíciles de entender. Aunque el Lcdo. Antonetti pudo haber escogido un lenguaje un poco más neutral para objetar las preguntas, ciertamente ello no constituye una ofensa que justifique que el abogado querellado lo amenazara con "arrancarle la

**(Continúa . . .)**

evidencia de actos impropios del Lcdo. Antonetti que el juez a cargo del caso anuló ciertas deposiciones tomadas por el Lcdo. Antonetti por razón de que éste no permitió al Lcdo. González Carrasquillo contrainterrogar al testigo que estaba siendo depuesto, y que ese mismo juez denegó una moción de descalificación presentada contra él por el Lcdo. Antonetti.[7]

De entrada debemos señalar que la actuación del Lcdo. González Carrasquillo fue desproporcionada, inaceptable, e injustificada. El Canon 29 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone que debe evitarse escrupulosamente toda cuestión personal entre los abogados y proscribe conducta impropia entre abogados al tramitar los pleitos. *In re* Martínez, Odell I, 148 D.P.R. 49 (1999). El Código de Ética Profesional le impone a todo abogado el deber de mantener relaciones cordiales y respetuosas con sus compañeros abogados. Ibíd. "A fin de cuentas, la

_____

cabeza" en la deposición del 18 de marzo de 1998. Más aun, cuando las actuaciones del Lcdo. Antonetti a las que se refiere el abogado querellado fueron en fechas anteriores a la deposición que nos ocupa, y además, no había motivo para que las mismas provocaran un súbito arrebato de cólera en ese momento.

[7] En cuanto a la validez de las deposiciones, del expediente del caso no surge cuales son las que fueron anuladas por el juez de instancia. No obstante, entendemos --para los fines de la discusión-- que aunque la deposición del 18 de marzo de 1998 hubiera sido anulada, la transcripción de ésta puede ser utilizada en este procedimiento disciplinario toda vez que va dirigida a establecer cuál fue el comportamiento de un abogado durante el curso de la misma, y no el contenido de lo declarado por la persona depuesta conforme a las Reglas de Procedimiento Civil, que reglamentan el uso de las deposiciones en los procedimientos civiles ordinarios.

estatura moral e intelectual inherente al ejercicio de la abogacía impone un debate jurídico libre de personalismos y posiciones subjetivas que lo degraden a vulgar diatriba." *In re* Martínez Texidor, 130 D.P.R. 905, 916 (1992).

Del mismo modo, el Canon 38 del Código de Ética Profesional, ante, dispone que el abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y la dignidad de su profesión. Conforme a ello, reafirmamos una vez más que la preservación del honor y la dignidad de la profesión legal exige una buena relación interpersonal entre abogados, toda vez que es responsabilidad ineludible de cada togado observar con sus compañeros y con el tribunal una actitud respetuosa, sincera, honrada, cordial y de cooperación profesional, velando siempre por el buen ejercicio de tan honrosa profesión. *In re* Martínez Texidor, ante; *In re* Pagán, 116 D.P.R. 107 (1985); *In re* Roldán González, 105 D.P.R. 498 (1976); Deberes del Abogado en Relación con sus Compañeros y Su Profesión, Criterio General, Cánones de Ética Profesional, 4 L.P.R.A. Ap. IX.

"La cordialidad, la amabilidad, deben ser el estilo de trato con los colegas. Si el ardor de las defensas, en determinadas circunstancias, acaloran los ánimos y provocan distanciamientos, ello no debe perdurar; sobrevenida la calma reflexiva, debe reanudarse sin demora ese estilo, para mantener la dignidad y jerarquía de la profesión." R.H. Viñas, Ética y derecho de la abogacía y de la

procuración, Buenos Aires, Eds. Pannedille, 1972, págs. 262-263.

Al amparo de este imperativo de civilidad, es evidente que el uso por un abogado de amenazas y de gestos de burla contra otros compañeros devalúa la dignidad de su profesión, pone en entredicho su temperamento y capacidad profesional, y, en última instancia, le resta fuerza persuasiva a sus argumentos.

El hecho que el Lcdo. González no fuera a cumplir con su amenaza no justifica que pueda dirigirse de esa manera hacia un compañero abogado. Amenazar a un compañero con "arrancarle la cabeza", es sencillamente conducta inaceptable que devalúa el honor y la dignidad de la profesión. De igual modo, sacarle la lengua a una compañera abogada durante una deposición --que, si bien no es una vista ante el juez, es parte del proceso judicial-- es una falta de respeto y es un acto que no ejemplifica la sobriedad y la solemnidad que debe prevalecer en todos los procesos judiciales, incluyendo la etapa de descubrimiento de prueba.

En fin, concluimos que el Lcdo. González Carrasquillo efectivamente violó el Canon 29 y 38 del Código de Ética Profesional, ante, al actuar de esa manera respecto a unos compañeros de la profesión. Su comportamiento denigra la profesión legal y atenta contra la dignidad de los abogados y de la profesión en general.

II

En el <u>segundo cargo</u> de la querella se le imputa al Lcdo. González Carrasquillo violaciones al Canon 9 del Código de Ética Profesional, ante, toda vez que, durante las deposiciones tomadas a la demandante --su cliente-- el 18 de marzo y 3 de junio de 1998, él desobedeció las instrucciones del juez a cargo del caso, Hon. Eliseo Gatean y Mejias, al efecto de que no debía interferir con el testimonio de su cliente durante la deposición, para sugerirle las contestaciones que debía dar, o para instruirle que no contestara las preguntas. Para tener un mejor entendimiento de las imputaciones hechas al Lcdo. González Carrasquillo, consideramos necesario hacer un breve resumen sobre lo que aconteció durante las referidas deposiciones.

Surge de las determinaciones de hechos del comisionado especial, y de la transcripción de la deposición del 18 de marzo de 1998, que al comienzo del interrogatorio del Lcdo. Antonetti a la demandante, Sra. Myriam Ayala, surgió cierta discrepancia entre los abogados de las partes por motivo de que el Lcdo. González Carrasquillo intentó dar instrucciones a su cliente en cuanto a como contestar ciertas preguntas que se le habían formulado a ésta.

La situación provocó una <u>consulta por teléfono</u> al juez del caso, Hon. Eliseo Gaetán y Mejías. Luego de dicha consulta la deposición continuó, pero hubo cierta divergencia entre los abogados en cuanto a cuáles habían

sido las órdenes telefónicas impartidas por el juez. La versión de los abogados de la parte demandada, según recogida en la transcripción, fue que el juez había dispuesto que el Lcdo. González Carrasquillo podía objetar las preguntas, pero sin elaborar en cuanto a los fundamentos de la objeción, y que no podía sugerir contestaciones a las preguntas. Mientras que el Lcdo. González Carrasquillo sostenía que, conforme lo que el juez había indicado, él podía objetar las preguntas, y vertir para el récord los fundamentos para su objeción.

No obstante lo dispuesto por el juez del caso sobre las intervenciones de los abogados durante la deposición, el Lcdo. González Carrasquillo instruyó a su cliente, en repetidas ocasiones a lo largo de la deposición, cómo ella debía contestar diversas preguntas que le eran hechas por el Lcdo. Antonetti.

Así por ejemplo, con relación a si la señora Ayala había firmado un contrato de empleo, aparte de su primer contrato probatorio, el Lic. González Carrasquillo repetidamente interrumpió el interrogatorio instruyéndola sobre cómo debía contestar. Además, cuando en contestación a una pregunta ella expresó que había firmado un contrato de empleo indefinido, el Lcdo. González Carrasquillo interrumpió los procedimientos para decirle que no hubo firma pues fue un contrato oral. Luego el querellado le expresó al Lcdo. Antonetti que su cliente se había equivocado al contestar y que por eso no quería que ella

contestara, instruyendo directamente a la testigo, expresando "dile que tú firmaste un contrato oral". Cuando la Lcda. De Luna, dirigiéndose al Lcdo. González Carrasquillo, le señaló que él no podía sugerir las contestaciones a la testigo, él contestó "Pues claro que sí."

Más adelante, en un momento en que hubo una pregunta pendiente de ser contestada, con relación al contrato de empleo de la demandante, el Lcdo. González Carrasquillo instruyó a su cliente: "Pide asesoramiento, pide un 'time' y asesoramiento, eso es lo que tienes que hacer." Como era de esperar luego de la anterior sugerencia de su abogado, la testigo pidió tiempo para asesorarse con él. A pesar de las quejas del Lcdo. Antonetti, el Lcdo. González Carrasquillo se levantó, se llevó a su cliente, y se comunicó con ella fuera de récord. Cuando regresó con ella, explicó que no podía permitir que ella contestara "una pregunta hábil." La testigo, entonces, contestó la pregunta, diciendo que ella tenía "un contrato oral con unas expectativas de trabajo hasta la jubilación." Cuando el Lcdo. Antonetti le preguntó a la testigo si "esa contestación se la dio su abogado cuando se levantó", el Lcdo. González Carrasquillo interrumpió e instruyó a su cliente: "Usted le dice que eso...que usted tiene un privilegio, lo que usted habla con su abogado. Así es la contestación, privilegio."

Luego, y en el contexto de unas preguntas sobre un cambio en las funciones de la testigo en su empleo, y después que la testigo contestó que su nuevo puesto se debió a que las funciones del puesto anterior habían sido transferidas a Estados Unidos, el Lic. Antonetti le pregunta "o sea, que usted se iba a quedar sin trabajo", y la testigo responde "eso es correcto." Aquí el Lcdo. González Carrasquillo vuelve a interrumpir, e increpa a su cliente diciéndole "¿Cómo tu sabes que tú te ibas a quedar sin trabajo?" Cuando el Lcdo. Antonetti le pregunta a la testigo que cómo ella sabía que se iba a quedar sin trabajo, el Lcdo. González Carrasquillo interrumpió a la testigo que ya había comenzado a contestar, y le dijo: "Objeción, tú no sabes." Como se podría esperar, la testigo entonces contestó "OK, pues no sé."

El comportamiento del Lic. González Carrasquillo, durante la deposición del 18 de marzo de 1998, motivó que los abogados de la parte demandada se quejaran ante el juez del caso en el foro de instancia, Hon. Eliseo Gaetán y Mejías. Para evitar confrontaciones entre las partes y con el fin de agilizar los procedimientos, el juez de instancia emitió una resolución, el 2 de junio de 1998, en la cual dispuso que las deposiciones posteriores se llevarían a cabo en un salón del propio tribunal. Además, nombró al Lcdo. Ángel M. Bonnet Rosario como "comisionado del tribunal", para dirigir las deposiciones y le concedió "discreción para imponer aquellas otras normas y guías que

sean necesarias a fin de que las deposiciones se lleven a cabo en forma ordenada, respetuosa y dentro del itinerario dispuesto."[8] Asimismo, en la referida resolución se dispuso expresamente que de haber objeción a alguna pregunta en la deposición se anotaría la misma, pero que, excepto con las objeciones de privilegio, el testigo tendría que contestar la pregunta objetada, haciéndose constar que, el tribunal posteriormente decidiría si la objeción era válida.

La continuación de la deposición de la señora Ayala se llevó a cabo el 3 de junio de 1998. Según surge de la transcripción, el comisionado designado, el Lcdo. Bonnet Rosario, leyó en voz alta la resolución emitida por el tribunal al inicio de la deposición. Luego de otros asuntos preliminares se procedió a la deposición como tal, durante el curso de la cual el Lcdo. González Carrasquillo <u>repetidamente interrumpió</u> el interrogatorio para instruir a su cliente que no contestara ciertas preguntas, o para sugerirle la contestación que debía dar, no obstante, los reiterados señalamientos en contrario del comisionado designado por el Tribunal, el Lcdo. Bonnet Rosario.

Al comienzo de la deposición, el Lcdo. González Carrasquillo insistió en que él tenía que asesorar a su cliente porque él entendía que las preguntas del Lcdo. Antonetti estaban dirigidas a confundirla. Así por ejemplo,

---

[8] No pasamos juicio, en este momento, sobre la procedencia y corrección de ese nombramiento y de las instrucciones que le fueron impartidas.

cuando la testigo se extendió brevemente al dar una contestación, el Lcdo. González Carrasquillo le dice: "Tú no tienes que dar esa explicación." Luego que el comisionado del tribunal le indicara que él no podía instruir a la testigo sobre cómo contestar determinadas preguntas, el Lcdo. González Carrasquillo amenazó con abandonar la deposición, porque según indica, él no es "una pared." Cuando se le explica que cualquier asesoramiento a su cliente lo tenía que haber llevado a cabo antes de la deposición, y no durante la misma, él contestó que ya lo había hecho, pero señala que su cliente no le hacía caso.

Poco después, el Lcdo. González Carrasquillo se queja de que su cliente no mira hacia donde él y luego le indica al comisionado que quiere un receso "para ver si le daba un cocotazo a mi cliente ... pa'que me haga caso." Cuando el Lcdo. Bonnet le volvió a recordar al Lcdo. González Carrasquillo que él no podía conversar con la testigo en medio del interrogatorio, él reiteró que sí, porque entendía que el Lcdo. Antonetti "está metiéndola en la cueva." Un poco después, cuando la testigo comenzó a contestar una pregunta, el Lcdo. González Carrasquillo le dijo: "No"; y cuando el Comisionado volvió a llamar la atención, él justificó su actuación diciendo: "Es que [ella] se pone a explicar ... y eso es lo que no permito." El comportamiento del Lcdo. González Carrasquillo, descrito

en el párrafo anterior, se repitió muchas veces más durante el resto de la deposición.[9]

### III

Del cuadro fáctico anteriormente esbozado podemos llegar a dos conclusiones. En primer lugar, que el Lcdo. González Carrasquillo incurrió en una conducta irrespetuosa durante el transcurso de las deposiciones en el referido caso, en total menosprecio de la autoridad del tribunal y la seriedad que debe imperar en todos los procesos judiciales. En segundo lugar, que el injustificable desprecio del Lcdo. González Carrasquillo de las reglas que rigen los procesos judiciales lo incapacita para ejercer la profesión de la abogacía.

En cuanto a su conducta irrespetuosa, conforme al Criterio General de la Parte II del Código de Ética Profesional, el buen funcionamiento del proceso judicial "es responsabilidad ineludible de todo miembro de la profesión legal". Por lo tanto, es deber de todo abogado procurar un ambiente de decoro y solemnidad en los

---

[9] Cuando la testigo indicó no recordar cierto dato, el Lcdo. González Carrasquillo le recordó el dato en cuestión, y cuando el Comisionado volvió a decirle que no podía hacer eso, él insistió que sí podía hacerlo "porque las normas tienen que seguir el *due process* y eso es una cuestión constitucional sustancial." Ahí surgió una discusión entre el Lcdo. Bonnet y el Lcdo. González Carrasquillo en la que éste insistió en que él podía asesorar a su cliente, que ni el Lcdo. Bonnet, "ni el juez, ni Cristo que se meta en el medio, nadie me paraliza a mí la Constitución por procedimientos técnicos."

tribunales con el fin de mejorar la calidad de la justicia que en éstos se imparte. *Ibíd*.

De igual forma, el Canon 9 del Código de Ética Profesional, ante, le impone a los miembros de la clase togada la obligación de observar para con los tribunales una conducta que se caracterice por el mayor respeto. Este postulado ético incluye indubitadamente el deber de todo profesional del derecho de atender con igual diligencia y seriedad las órdenes del Tribunal de Primera Instancia. *In re Soto Colón*, res. el 9 de noviembre de 2001, 2001 T.S.P.R. 166; *In re Díaz Grau*, res. 1 de mayo de 2001, 2001 T.S.P.R. 70. Anteriormente hemos señalado que la desatención a las órdenes emitidas por los tribunales de justicia constituye un grave insulto a la autoridad de éstos en directa violación al deber de conducta exigido por el referido Canon 9. Véanse: *In re Otero Fernández*, 145 D.P.R. 582 (1998); *In re Claudio Ortiz*, 141 D.P.R. 937 (1996); *In re Colón Torres*, 129 D.P.R. 490 (1991); *In re Díaz García*, 104 D.P.R. 171 (1975).

La forma y manera en que el Lcdo. González Carrasquillo se condujo durante la toma de las deposiciones constituye una falta de respeto hacia los tribunales, por lo que la misma es violatoria del Canon 9 del Código de Ética Profesional. Aunque la toma de una deposición no es tan formal como una vista ante un juez, sigue siendo parte esencial del proceso judicial. Conforme a ello, para su buen funcionamiento, los abogados siempre deben procurar

que en las deposiciones prevalezca un ambiente de decoro y solemnidad.

Asimismo, la desobediencia del Lcdo. González Carrasquillo de las órdenes del tribunal, en cuanto a la forma en que debía conducirse la deposición, resulta en una clara violación al Canon 9 del Código de Ética Profesional, ante.

De igual manera, entendemos que el Lcdo. González Carrasquillo violó el Canon 38 del Código de Ética Profesional[10], ante, al denigrar con su conducta el honor y la dignidad de la profesión. Resulta sorprendente que el Lcdo. González Carraquillo insistiera, constantemente, durante las deposiciones sugerirle a su clienta las contestaciones, o, en la alternativa, que no contestara a las preguntas que le formulara el abogado de la otra parte. Peor aun, es el hecho de que el Lcdo. González indicara que tenía derecho así actuar. Ello resulta en una clara violación a todas las reglas que regulan los procedimientos ante los tribunales, a la buena práctica de la abogacía, además de ser contrario al buen funcionamiento de nuestro sistema adversativo de derecho.

En virtud de lo antes expuesto, no albergamos duda que la conducta desplegada por el Lcdo. González Carrasquillo,

---

[10] El Canon 38 del Código de Ética Profesional, ante, dispone en lo pertinente que:

> El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión...

durante las deposiciones del 18 de marzo de 1998 y del 3 de junio de 1998, violó tanto del Canon 9 como del Canon 38 del Código de Ética Profesional, ante, al no demostrar el más mínimo respeto hacia los procesos judiciales y faltarle al honor y la dignidad de la profesión.

IV

El Lcdo. González Carrasquillo fue suspendido como abogado por este Tribunal el 12 de junio de 1998, por no haber pagado las cuotas del Colegio de Abogados.[11] El 9 de octubre de 1998 fue reinstalado, luego de que presentara evidencia de que se había puesto al día en el pago de dichas cuotas.

Según surge del informe del comisionado especial, y del expediente del caso, durante el periodo en que el Lcdo. González Carrasquillo estuvo suspendido del ejercicio de la profesión, el actuó como abogado en varios incidentes relacionados con el caso de Myriam Ayala v. GH Bass Caribbean, Inc., ante. En específico, el Lcdo. González Carrasquillo presentó varias mociones en el referido caso.

El total de las mociones presentadas fueron seis, a saber: (a) una "Moción sobre Continuación de Deposición", el 11 de agosto de 1998; (b) una "Moción solicitando se ordene pago", el 18 de agosto de 1998; (c) una "Moción Solicitando se ordene a Empleados de la Demandada a

---

[11] La sentencia disponiendo dicha suspensión fue notificada al Lcdo. González Carrasquillo el 25 de junio de 1998.

Comparecer a toma de deposición", el 18 de agosto de 1998; (d) una "Moción Solicitando Documentos", el 18 de agosto de 1998; (e) una "Moción para Enmendar Epígrafe...", el 18 de agosto de 1998; (f) una "Solicitud de Reconsideración...", el 8 de septiembre de 1998.

Durante la vista que se celebró en este caso ante el Comisionado Especial Hermida, el Lcdo. González Carrasquillo admitió que había presentado las seis mociones, sabiendo que estaba suspendido del ejercicio de la profesión, y expresó que se sentía arrepentido de haberlo hecho, pero explicó que cuando ello ocurrió se había sentido en la necesidad de actuar en beneficio de su cliente, pues de otra forma ella hubiese quedado totalmente indefensa.

Por otro lado, y aun cuando el Comisionado Especial Hermida no lo discute en su informe, del expediente del caso surge claramente que el Lcdo. González Carrasquillo, estando suspendido del ejercicio de la abogacía, compareció el 7 de octubre de 1998 a una toma de deposición de la parte demandante, Sra. Miriam Ayala.[12] No sólo estuvo en la

---

[12] Es norma trillada que la regla de deferencia a las determinaciones de hecho del Comisionado Especial, igual que en el caso de los jueces de instancia y los oficiales examinadores, se aplica exclusivamente a la prueba testifical vertida en su presencia, ya que es éste quien observa la actitud de los testigos, su forma de declarar, sus gestos, y en general, su conducta al prestar declaración. *In re* Ortiz Brunet, 152 D.P.R. 542, 549. No obstante, cuando estamos ante prueba documental, este Tribunal está en igual posición que el Comisionado Especial

(Continúa . . .)

deposición ejerciendo sus funciones como representante legal de la Sra. Ayala sino que éste llevó a cabo un extenso contrainterrogatorio a ésta.

Debemos señalar que no existe justificación alguna para que un abogado suspendido ejerza la profesión. Si permitiéramos que un abogado suspendido del ejercicio de la profesión determine, a su discreción, qué tipo de gestiones profesionales puede realizar y de cuáles debe abstenerse, estaríamos consintiendo "en una anarquía impermisible en un sistema de orden, como debe ser el sistema judicial." *In re Cepeda Parrilla*, 108 D.P.R. 527 (1979).

Resulta totalmente inexcusable que el Lcdo. González Carrasquillo, no obstante estar suspendido del ejercicio de la abogacía, haya presentado escritos en los tribunales y haya participado en la toma de una deposición, durante la vigencia de dicha suspensión. Ello, además de constituir una burla al poder disciplinario de este Tribunal, constituye una violación a la Sección 7 de la Ley Núm. 17 del 10 de junio de 1939, 4 L.P.R.A. sec. 740, sobre el ejercicio ilegal de la profesión de abogado en nuestra jurisdicción.

Indudablemente el querellado transgredió varios principios éticos de suma importancia. La naturaleza y

---

para hacer sus propias determinaciones y no podemos renunciar a ello sin afectar la efectividad de nuestra función disciplinaria. *Ibíd*.

gravedad de las infracciones éticas incurridas por el Lcdo. González Carrasquillo denotan su incapacidad para ejercer tan honrosa profesión, como es la de abogado. En vista de ello, procede la imposición de severas medidas disciplinarias al Lcdo. González Carrasquillo.

V

Por los fundamentos antes expresados, procede decretar la suspensión de Pedro González Carrasquillo del ejercicio de la abogacía y de la notaría en nuestra jurisdicción por el término de tres (3) años.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Pedro González Carrasquillo

CP-1999-1

SENTENCIA

San Juan, Puerto Rico, a 24 de mayo de 2005

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia decretando la suspensión de Pedro González Carrasquillo del ejercicio de la abogacía y de la notaría en nuestra jurisdicción por el término de tres (3) años, contado el mismo a partir de la fecha de notificación de la presente Opinión Per Curiam y Sentencia.

Le imponemos a éste el deber de notificar a todos sus clientes de su presente inhabilidad para seguir representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión a los distintos foros judiciales y administrativos del País. Deberá, además, certificarnos dentro del término de treinta (30) días, a partir de la notificación de la presente Opinión Per Curiam y Sentencia, el cumplimiento de estos deberes.

El Alguacil de este Tribunal procederá a incautarse de la obra y sello notarial de Pedro González Carrasquillo, debiendo entregar los mismos a la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino.


                                        Aida Ileana Oquendo Graulau
                                        Secretaria del Tribunal Supremo