EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2005 TSPR 148 |
|---|---|
| William Marini Román | 165 DPR _____ |

Número del Caso: CP-2000-10


Fecha: 6 de octubre de 2005


Oficina del Procurador General:

Lcda. Yvonne Casanova Pelosi
Procuradora General Auxiliar

Abogados de la Parte Querellada:

Lcdo. Pedro E. Ortiz Alvarez
Lcda. Mónica I. De Jesús Santana




Materia: Conducta Profesional




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

William Marini Román                    CP-2000-10

PER CURIAM

San Juan, Puerto Rico, a 6 de octubre 2005.

El licenciado Manuel Martínez Umpierre presentó dos quejas ante este Tribunal contra el licenciado William Marini Román.[1] En las mismas se cuestionó la conducta del licenciado Marini Román durante la tramitación judicial de varios casos relacionados con reclamaciones de agricultores por los daños provocados durante el paso del Huracán Hortensia en el año 1996. En estos casos el licenciado Martínez Umpierre representaba a los agricultores y el licenciado Marini Román representaba a la Corporación de Seguros Agrícolas.

---

[1] El Lcdo. Marini Román fue admitido al ejercicio de la abogacía el 20 de abril de 1979 y al ejercicio del notariado el 29 de mayo de 1979.

Las quejas se refieren a incidencias acaecidas tanto a nivel de instancia como a nivel apelativo, en los siguientes casos: *Marrero Rullán v. Corporación de Seguros Agrícolas,* Civil Núm. KLAN99-0783 y *Correa Rodríguez v. Corporación de Seguros Agrícolas*, Civil Núm. KLAN00-0784, casos que fueron consolidados (en adelante *"Marrero Rullán-Correa Rodríguez"*); *Roig Olivieri v. Corporación de Seguros Agrícolas*, Civil Núm. JAC98-0014 (en adelante *"Roig Olivieri"*); *Ramos Castillo v. Corporación de Seguros Agrícola*, Civil Núm. JAC97-0601 (en adelante "Ramos Castillo"); y, *Planell v. Corporación de Seguros Agrícolas*, Civil Núm. L3C1996-0480 (en adelante *"Planell"*).

El licenciado Martínez Umpierre esbozó en su escrito que el licenciado Marini Román, en los casos consolidados *Marreo Rullán-Correa Rodríguez,* presentó como apéndice a un escrito de apelación un documento alterado y distinto al que se había ofrecido y admitido en evidencia ante el Tribunal de Primera Instancia. Alegó además que en estos casos el licenciado Marini Román hizo unas declaraciones ante el tribunal de instancia, tanto orales como escritas, alegadamente falsas, relacionadas con el nombramiento del agrónomo Javier Domenech como árbitro en los casos.

Por otro lado, en los casos *Roig Olivieri y Ramos Castillo* se alegó también que el querellado declaró hechos falsos y engañosos en relación al nombramiento del agrónomo Domenech. El licenciado Martínez Umpierre también le imputó al querellado utilizar tácticas impropias para

solicitar la inhibición del Hon. Juez Roberto Martínez Pomales en el caso *Planell*.

Finalmente, en la queja relacionada con la tramitación del caso *Ramos Castillo,* se planteó que el licenciado Marini Román incurrió en conducta engañosa al someter en el apéndice del recurso de apelación un informe pericial distinto al que había sido sometido ante el foro de instancia.

Le concedimos un término al querellado para replicar a las quejas instadas en su contra. En su defensa, éste adujo que lo ocurrido en el caso de *Marrero Rullán-Correa Rodríguez* no fue intencional ni con el propósito de engañar al tribunal o a sus compañeros, sino para ilustrar al tribunal.[2] Asimismo indicó que el asunto del nombramiento del árbitro en los casos señalados era una controversia legítima y que sólo estaba protegiendo los intereses de su cliente. En relación con la inhibición del Juez Martínez Pomales en el caso *Planell*, éste negó haber actuado de forma inapropiada. Finalmente, indicó que el problema con el apéndice en el caso *Ramos Castillo* fue producto de una "inadvertencia" y que no representó perjuicio alguno para las partes. El licenciado Marini Román señaló que es la primera vez en los 24 años que lleva ejerciendo la profesión que se ha visto sometido a un procedimiento disciplinario.

---

[2] Cabe señalar que en su comparecencia el licenciado Marini Román presentó una queja contra el licenciado Martínez Umpierre, la cual se archivó mediante Resolución de este Tribunal el 17 de marzo de 2000.

Eventualmente, referimos los escritos presentados al Procurador General para evaluación e informe. Éste compareció y en el informe sometido concluyó que las actuaciones del licenciado Marini Román violaron los Cánones de Ética Profesional que rigen la profesión. [3] Ordenamos la presentación de la correspondiente querella. En la querella presentada se formularon dos cargos, a saber: violación a las disposiciones del Criterio General que regula los deberes del abogado para con los tribunales y violación al Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX C.35.

El 11 de mayo de 2001 designamos a la licenciada Ygrí Rivera de Martínez como Comisionada Especial en este caso. Luego de varios trámites procesales las partes acordaron dividir la querella en cinco controversias, a saber: la primera relacionada con la alteración de un documento presentado como parte de un apéndice ante el Tribunal de Circuito de Apelaciones; la segunda y la tercera, relacionadas con expresiones tanto orales como escritas, alegadamente falsas, respecto al nombramiento de un perito; la cuarta, se refiere a la unión a un determinado caso de un abogado con el único propósito de provocar la inhibición del magistrado que presidía la vista y el traslado a otra sala del pleito; y, quinto, presentar como parte de un apéndice de un recurso ante el Tribunal de Apelaciones, un

---

[3] El Procurador General en el informe sometido concluyó que el licenciado William Marini Román había violado los Cánones 18 y 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y los Deberes del abogado para con los tribunales, Criterio General.

documento distinto al que había sido admitido y considerado por el Tribunal de Primera Instancia.

Se celebraron vistas los días 4 y 20 de diciembre de 2001 en la cual ambas partes tuvieron la oportunidad de presentar sus posiciones respecto la querella presentada. Luego de evaluar la prueba presentada, que incluyó los autos originales de todos los casos así como la transcripción de la vista celebrada el 6 de agosto de 1999 ante el Tribunal de Primera Instancia en los casos de *Roig Olivieri* y *Ramos Castillo*, la Comisionada sometió su extenso informe.

En el informe, la Comisionada concluyó que la prueba demostró que las acciones del licenciado Marini Román, de someter en los recursos presentados en alzada cierta documentación distinta a la presentada ante el Tribunal de Primera Instancia, reflejaba negligencia, descuido y falta de diligencia en el trámite apelativo, pero no intención de engañar al tribunal. Por otro lado, en el informe determinó que no hubo violación ética en los incidentes que se referían al nombramiento de un árbitro. La Comisionada concluyó que ésta fue una controversia extensa y objeto de "gran discusión ante el foro judicial" que generó a su vez recursos de revisión de laudos. Finalmente, concluyó que la prueba sí demostró que el querellado había violado los Cánones de Ética en el caso *Planell* relacionado con la inhibición del juez Martínez Pomales.

El 20 de octubre de 2003, el querellado presentó su réplica al Informe de la Comisionada. En el escrito

presentado se expresó estar de acuerdo con las determinaciones de hecho expresadas en el informe, allanándose a las mismas. En vista de lo cual se refirió únicamente a la controversia generada en el caso *Planell,* indicando que la prueba de cargo fue insuficiente y de naturaleza conjetural por lo que no se sostenía el cargo.

El caso quedó sometido en sus méritos para nuestra adjudicación el 27 de enero de 2005. Estando en posición para resolver pasamos a así hacerlo.

## II

La abogacía cumple una función social de notable importancia por su aportación imprescindible a la realización de la Justicia. El abogado, además de defensor de su cliente es colaborador de la Justicia. Los abogados de ambas partes conforman dentro de un proceso un elemento indispensable en el complejo trámite de impartir justicia. Éstos, junto al juez, comparten el mismo ideal de justicia. Así pues, la buena marcha del proceso judicial del país es responsabilidad ineludible de todo miembro de la profesión legal. Deberes del abogado para con los tribunales, Criterio General, Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

El abogado contrae un deber de lealtad para con el juez "que se traduce en no engañarlo, es decir actuar con honradez en relación a la exposición de los hechos y al material probatorio que se aporta al proceso." M. Martínez Crespo, *Nosotros los abogados*, Ed. Hammurabi, Buenos Aires, Argentina, 1995, pág. 126. El Canon 35 del Código

Ética Profesional, 4 L.P.R.A. Ap. IX C. 35, exige de todo abogado que, en su conducta para con los tribunales, sus representados y sus compañeros, prevalezca la sinceridad y honradez. No es sincero ni honrado utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de hechos o del derecho.

Como funcionario del tribunal, todo abogado viene obligado a procurar con su conducta la mejor administración de la justicia, observando en su diario quehacer el "juego limpio" y no el subterfugio. Su obligación primordial es impeler el procedimiento con un carácter ético y profesional. Cf. *Berríos v. U.P.R.*, 116 D.P.R. 88, 91 (1985). En *In re Sánchez Rodríguez*, 123 D.P.R. 876, 881 (1989), expresamos que los abogados deben desempeñar sus funciones con el mayor grado de competencia, responsabilidad e integridad utilizando al máximo el intelecto, la preparación y la dedicación que exige su ministerio. Las obligaciones consagradas en el Canon 35, *supra*, constituyen normas mínimas de conducta que pretenden preservar el honor y la dignidad de la profesión. *In re Martínez*, 148 D.P.R. 49 (1999).

Por otro lado, el Canon 18 del Código de Ética Profesional, *supra*, dispone que es impropio asumir una representación profesional consciente de no poder rendir una labor idónea y efectiva. **Exige además, defender los intereses del cliente adecuada y responsablemente desplegando la mayor diligencia y cuidado en todo momento.**

Véase, *In re Pereira Esteves*, 147 D.P.R. 147 (1998); *In re Verdejo Roque*, 145 D.P.R. 83 (1998).

Cabe señalar que en el descargo de nuestra función disciplinaria este Tribunal no viene obligado a aceptar el informe del Comisionado Especial, por lo que puede adoptar el mismo, modificarlo e inclusive, rechazarlo. *In re Soto López*, 135 D.P.R. 642 (1994); *In Re López de Victoria Brás*, 135 D.P.R. 688 (1994); *In re Rivera Arvelo y Ortiz Álvarez*, 132 D.P.R. 840 (1993). Ahora bien, también hemos resuelto que en ausencia de demostración de prejuicio, parcialidad o error manifiesto de parte del Comisionado Especial al apreciar la prueba, este Tribunal no alterará las determinaciones de hecho que éste haga. *In re Colton Foltán,* 118 D.P.R. 1 (1991).

Con esta normativa presente, procede que examinemos la conducta del licenciado Marini Román a la luz de las determinaciones de hecho de la Comisionada Especial.

**III**

**A. Documento Alterado**

La querella presentada en los casos consolidados *Marrero Rullán-Correa Rodríguez* le imputa al licenciado Marini Román que actuó de forma deshonesta y engañosa al presentar como apéndice a su apelación un documento alterado, distinto al que se había ofrecido y admitido en evidencia ante el tribunal de instancia. Se trata de un documento preparado por la Corporación de Seguros Agrícolas relacionado con el cultivo de café con una serie de columnas referentes a los años de cosecha, tipo de café

cultivado y otros. El licenciado Marini le añadió al documento incluido en el apéndice una "leyenda". Afirmó que lo hizo con el propósito de explicarles a los jueces del tribunal apelativo qué era lo que significaba cada una de las columnas.

Indicó además que no tuvo intención alguna de confundir al foro apelativo y que su único propósito fue poner a los jueces de ese tribunal en la misma posición que estuvo el tribunal de instancia al resolver al caso. El querellado señaló en sus escritos que nunca alteró documento alguno. El licenciado Marini Román indicó que el Tribunal de Apelaciones procedió a sancionarlo económicamente por faltar al "Reglamento del Tribunal" y no por haber alterado el documento.

Sobre este particular la resolución dictada por el tribunal apelativo señala lo siguiente:

3. El abogado de la parte apelante, Corporación de Seguros Agrícolas, ha aceptado que los apéndices de los recursos contienen varios documentos que no fueron presentados en el Tribunal de Primera Instancia. Se acompañan para fundamentar las alegaciones de dicha parte, no como prueba ofrecida y no admitida, y tampoco para probar la jurisdicción del tribunal o la ausencia de ella. Eso diferencia este recurso de Ramos v. Condominio Diplomat, 117 DPR 641 (1986), e Ind. Siderúrgica v. Thysseen Steel Caribbean, 114 DPR 548 (1983); decisiones que el abogado de la demandada-apelante invoca como justificación. También se admite haber presentado un documento alterado, al incluirse una fotocopia que luce distinta a la que se admitió en instancia (tiene una columna de números adicional) y se le añadió lo que la parte apelante llama una leyenda. Ante esa alteración indubitada y admitida, no podemos considerar los documentos identificados como Exhibits 69 . . ., 75 . . ., y 76 . . ., ni el Exhibit 44 . . . Véanse la Regla 54.4(C)

de Procedimiento Civil, según enmendada, 32 LPRA AP III (Supl. 1999); y la Regla 74(B) de nuestro Reglamento, 4 LPRA Ap. XXII-A. Los documentos apócrifos no tienen cabida en el litigio justo y honesto.

4. La parte apelante también incidió al no incluir copia completa de la "Moción impugnando alegado informe de árbitro". . . No incluyó los anejos de esa moción.

5. Aunque lo anterior no da base para desestimar el recurso, estas violaciones de nuestro Reglamento no pueden pasar desapercibidas. Por ejemplo, el Tribunal Supremo ha advertido repetidamente que la práctica de incluir en el apéndice documentos que no se presentan ante el Tribunal de Primera Instancia "es indeseable y debe descontinuarse. Se coloca al tribunal de instancia en una señalada desventaja". Belmonte v. Mercado Reverón, Admor; 95 DPR 57, 264 (1967). Véase también, P.N.P. v. Rodríguez Estrada, Pres. C.E.E., 123 DPR 1, 36, (1988). Así, pues, se impone al abogado de la parte demandada-apelante en ambos recursos, Lcdo. William Marini Román, una sanción de $500.00 en cada uno, para un total de $1,000.00. Esta será pagada no más tarde de quince (15) días después de la notificación de esta Resolución en la Secretaría del Tribunal de Primera Instancia, Sala Superior de Utuado, con referencia al expediente LAC96-0135 III. Simultáneamente nos informará haber cumplido con esta orden.

6. Se apercibe a la parte apelante que cualquier otra violación de las reglas o las órdenes de este Tribunal, incluyendo la falta de pago de la sanción aquí impuesta, propiciará la desestimación de los recursos.

El entonces Tribunal de Circuito de Apelaciones fue claro y enfático al concluir que el licenciado Marini Román había alterado el documento y procedió a sancionarlo por violar su Reglamento.[4]     Es evidente que el querellado

---

[4] La Regla 74(B) del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-A lee:
(B) Los apéndices sólo contendrán copias de los documentos que formen parte de los autos del Tribunal de Primera Instancia.

aceptó ante el foro apelativo haber alterado el documento. Así también lo concluyó la Comisionada. Lo cierto es que no fue sino hasta que el licenciado Martínez Umpierre llamó la atención del tribunal sobre dichos documentos que el querellado le indicó al foro apelativo que el documento que contenía la leyenda era distinto al presentado en instancia. Además, se incluyeron en los apéndices varios documentos que no fueron presentados en el Tribunal de Primera Instancia, también en violación del Reglamento del foro apelativo intermedio.

La Comisionada concluyó sobre este particular que la actuación del licenciado Marini Román no fue con el propósito o la intención de engañar al tribunal por lo que recomienda que ello se tome como atenuante.

Evaluado el expediente completo del caso no coincidimos con la conclusión de la Comisionada. Adviértase que no es sino hasta que el licenciado Martínez alerta al tribunal sobre los documentos, que el querellado le informa al foro apelativo intermedio sobre los mismos. En reiteradas ocasiones hemos censurado la práctica de alterar los apéndices o incluir documentos distintos ante el Tribunal de Apelaciones. *P.N.P v. Rodríguez Estrada*, 123 D.P.R. 1, 36 (1988); *Belmonte v. Mercado Reverón*, 95 D.P.R. 257, 264 (1967). Se espera, que un abogado con los años de experiencia del licenciado Marini Román conozca, al menos, principios elementales de la práctica apelativa que veda la presentación de documentos en alzada que no

estuvieron ante la consideración del foro primario, y se atenga a ellos.

No podemos pasar por alto que dicha acción tuvo repercusiones perjudiciales para su representado ya que el documento en cuestión no fue considerado por el tribunal apelativo al atender el recurso que pendía ante sí. Como poco, entonces, lo anterior denota un desconocimiento del querellado de principios fundamentales de la práctica apelativa, lo cual va en contra del deber de todo abogado de rendir una labor competente. Reiteradamente hemos afirmado que todo abogado tiene el deber de aplicar en cada caso sus conocimientos, experiencias y habilidad de manera adecuada, responsable, capaz y efectiva. *In re Cardona Ubiñas,* 146, D.P.R. 598, 605 (1998); *In re Vélez Valentín,* 124 D.P.R. 403 (1989). Un patrón de falta de adecuacidad en el trámite judicial, de indiferencia a los requerimientos procesales, constituye una violación al Canon 18. El error o la ignorancia del Derecho supone un quebranto del deber fundamental de diligencia de todo abogado.

Concluimos, a base de la prueba presentada ante la Comisionada Especial, que la conducta en este caso constituyó un quebranto del mandato del Canon 18, así como también del Canon 35. *In re Roca Rosselli*, res. 1ero de abril de 2005, 164 ___, 2004 T.S.P.R. 60.

**B. <u>Nombramiento del Árbitro José Domenech</u>**

La querella formulada le imputa al licenciado Marini hacer unas expresiones contradictorias e inciertas respecto

a la designación del agrónomo Javier Domenech como árbitro en varios casos. Conforme se desprende del informe de la Comisionada Especial, en el caso *Roig Olivieri,* el licenciado Marini Román manifestó en corte abierta durante una vista, que el agrónomo Domenech no había sido designado para ese caso sino que fue nombrado árbitro para el caso *Ramos Castillo.* Por otro lado, en la tarde de ese mismo día cuando se estaba ventilando el caso *Ramos Castillo*, ante la misma sala expresó que el árbitro Domenech había sido designado para el caso *Roig Olivieri* y no para el caso *Ramos Castillo*. Surge de la prueba que dichas declaraciones motivaron un comentario de la juez que presidía la sala, en el sentido de que el querellado estaba sosteniendo "posiciones contrarias" sobre un mismo asunto.

También se le imputó al querellado haber presentado unas mociones en las que afirmaba que el agrónomo Domenech no había sido nombrado en los casos *Marrero Rullán-Correa Rodríguez*, aún cuando le constaba que había acreditado su nombramiento mediante unas cartas enviadas al licenciado Martínez Umpierre.

En su informe, la Comisionada señaló que debido a que el licenciado Marini Román y el licenciado Martínez Umpierre litigaban varios casos similares, --aproximadamente veinte (20) casos-- el asunto del árbitro provocó confusión en los procedimientos, lo cual a su vez, suscitó diversos planteamientos ante el tribunal y agrias disputas entre los letrados. A base de lo anterior

concluyó que no había prueba suficiente para determinar violación ética de parte del licenciado Marini Román.

Un examen minucioso de la transcripción de las vista de los casos antes mencionados corrobora la conclusión de la Comisionada. El expediente revela que las partes tuvieron una extensa discusión sobre el nombramiento de los árbitros, la cual fue ponderada por el tribunal de instancia. Además de varias comunicaciones por escrito sobre este particular. La evidencia no demostró que el licenciado Marini Román hubiera desplegado una conducta de carácter intencional en ánimo de engañar al tribunal y tomar ventaja indebida.

A base de lo anterior, concurrimos con la conclusión de la Comisionada Rivera de Martínez que la prueba en cuanto a este cargo no permite concluir que, en efecto, se incurrió en una violación ética.

## C.  Inhibición del Juez Martínez Pomales

Del informe de la Comisionada surge que durante el transcurso del caso *Planell,* el querellado invitó al licenciado Ángel S. Bonilla a unirse a la representación legal del caso, el cual se ventilaba ante el Juez Martínez Pomales. El licenciado Bonilla, meses antes, había presentado una demanda contra el Juez Martínez Pomales y a consecuencia de dicha demanda, existía una orden del Juez Administrador Regional que trasladaba los casos del licenciado Bonilla de la Sala de Lares a la Sala de Utuado.

Así las cosas, el 15 de octubre de 1997, el licenciado Bonilla en el caso de *Planell* presentó dos mociones ante el

tribunal. En la primera hacía constar que se unía a la representación del licenciado Marini Román y en la segunda, solicitaba la inhibición del Juez Martínez Pomales y el traslado del caso a Utuado, según proveía la orden del juez administrador.

Por otro lado, ese mismo día, 15 de octubre, la Comisión de Evaluación de Jueces le remitió una carta al licenciado Marini en la que indicaba que se estaba evaluando la renominación del Juez Martínez Pomales. En ese momento se percató que el licenciado Martínez Umpierre era miembro de dicha Comisión.

El 20 de octubre de 1997, apenas cinco días después, el licenciado Marini Román presentó una moción de inhibición en este caso bajo el fundamento de conflicto de interés, habida cuenta de que el licenciado Martínez Umpierre era miembro del Comité Evaluador.

El 21 de octubre de 1997, el licenciado Bonilla presentó una tercera moción, de fecha de 20 de octubre, para solicitar su retiro de la representación legal y que se entendiera la moción de inhibición presentada como no radicada y desistió de la solicitud de traslado.

El 22 de octubre de 1997, el licenciado Marini solicitó el desglose de su moción de inhibición. Posteriormente, las partes acordaron, con anuencia del juez, trasladar el caso a Utuado.

El querellado negó que la determinación de unir al licenciado Bonilla como abogado en el caso de *Planell* tuviera como propósito procurar la inhibición del juez

Martínez Pomales. Argumentó en sus escritos que él tenía un acuerdo de sustitución mutua con Bonilla mediante el cual cada uno sustituía al otro cuando, por "diversas razones", uno de ellos no podía comparecer a un señalamiento. Indicó que él "desconocía" la existencia de la orden emitida por el Juez Administrador Regional en relación al traslado de casos en que participara el licenciado Bonilla. Puntualizó que la anuencia del juez a la orden del traslado se debió a que el licenciado Martínez Umpierre era para esa fecha miembro del Comité Evaluador de Jueces.

Evaluado detenidamente el informe de la Comisionada así como los escritos del querellado y el querellante y la prueba en autos, nos resulta increíble la versión del querellado. Éste nos indica que "desconocía" de la orden emitida por el Juez Administrador Regional disponiendo del traslado de los casos en que el licenciado Bonilla participaba. Lo cierto es que la orden emitida por el Juez Administrador Regional no era un secreto sino que era una orden de conocimiento general, conforme concluyó la Comisionada Especial. De otra parte, la experiencia nos indica que en foros judiciales pequeños, como lo es Lares, toda la comunidad legal se conoce y los abogados advienen en conocimiento de las medidas administrativas que los jueces administradores toman respecto los asuntos que se ventilan en el foro.

Además, nos resulta inverosímil que ante la relación de amistad existente entre el licenciado Bonilla y el

licenciado Marini, éste último desconociera que unir al licenciado Bonilla al caso provocaría la inhibición del Juez Martínez Pomales. ¿Cómo es posible que ese hecho no se lo hubiera informado el licenciado Bonilla cuando Marini Román le solicitó se uniera como abogado de récord en el caso de *Planell*? No podemos concluir tampoco que el licenciado Bonilla actuó por su cuenta al solicitar la inhibición del juez Martínez Pomales, pues conforme concluyó la Comisionada, hay prueba de que las mociones del licenciado Bonilla le fueron remitidas al licenciado Martínez Umpierre de las oficinas del licenciado Marini.

En su contestación, el querellado señaló que no era su intención inhibir al Juez Martínez Pomales, y sólo procuró la misma cuando se enteró que el juez estaba siendo evaluado por la Comisión de Evaluación de Jueces de la cual el licenciado Martínez Umpierre era miembro. Si esa no era su intención, ¿por qué acudir al licenciado Bonilla? No nos es creíble la versión ofrecida por Marini en su defensa.

A la luz de lo anterior concluimos que la conducta del querellado durante el trámite del caso de *Planell* ciertamente violentó el criterio general que exige que los abogados propicien la buena marcha del proceso judicial. Además, dichas actuaciones son contrarias a los postulados de sinceridad y honradez hacia los tribunales y hacia los compañeros de profesión, por lo que incurrió también en violación al Canon 35.

D.  **Apéndice Distinto**

El último incidente imputado al querellado se refiere a que incluyó en el recurso apelativo un informe pericial que no fue incluido en los autos del tribunal de instancia. Al percatarse de esto, el licenciado Martínez Umpierre pidió la desestimación del recurso por violar el Reglamento del Tribunal de Circuito de Apelaciones. El querellado admitió que no había revisado el apéndice con cuidado y sometió el informe equivocado. El propio querellado reconoció una "cierta falta de diligencia" en su acción. Contestación a la querella, a la pág. 4.

De las determinaciones de hecho se desprende que luego de haber sido advertido de su error, el querellado discutió lo sucedido con el Director Ejecutivo de la Corporación de Seguros Agrícolas para esa fecha, el Sr. Carlos Rodríguez Cabrera, quien luego de analizar el caso, lo autorizó a desistir del recurso apelativo.[5] Finalmente, el Tribunal de Apelaciones aceptó la solicitud de desestimación sin sancionar al querellado.[6]

La Comisionada quedó convencida de que no hubo intención de engañar por parte del querellado en relación a este incidente. No obstante, apuntó que la actuación del licenciado Marini implica, al menos, negligencia y descuido en la representación legal de su cliente. Coincidimos con dicha apreciación. A base de los hechos presentados, no se

---

[5] Tales acciones también fueron autorizadas por la Junta de Directores de la Corporación de Seguros Agrícolas en una reunión celebrada el 20 de enero de 2000.
[6] Posteriormente, la Corporación desistió de todos los casos que estaban pendientes.

puede concluir que el querellado incluyera el apéndice distinto para inducir a error al tribunal. Más bien, las determinaciones de hecho revelan que el incidente se debió a un descuido por parte del querellado de su obligación de cotejar debidamente todos los documentos que acompañan el apéndice del recurso. No cabe duda que el licenciado Marini Román incurrió en una conducta que denota incompetencia y negligencia en la gestión profesional. Sobre este particular siempre hemos enfatizado que "el ejercicio de la práctica de la profesión de abogado, requiere en todo momento **celo, cuidado y prudencia.**" Canon 18, *supra; In re Aponte Berdecía*, res. 22 de enero de 2004, 160 D.P.R.___, 2004 T.S.P.R. 24.

**IV**

A la luz de la discusión que antecede concluimos que el licenciado William Marini Román violó los Cánones 18 y 35 de Ética Profesional en las instancias antes mencionadas, según fueron presentadas por el Procurador General, al igual que el Criterio general de los deberes del abogado para con los tribunales.

Habida cuenta, sin embargo, en más de veinte y cinco años en la práctica de la profesión, ésta ha sido la única instancia en que se ha presentado una querella en contra del licenciado William Marini Román, nos limitamos en esta ocasión a censurarle enérgicamente por su conducta. Le advertimos que, en lo sucesivo, debe ser más cuidadoso y diligente en el manejo de sus casos y abstenerse de utilizar cualquier táctica litigiosa que vaya en contra de

los principios éticos de la profesión.  Le apercibimos que en otra ocasión seremos más severos.

Se dictara sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

William Marini Román                    CP-2000-10

SENTENCIA

San Juan, Puerto Rico, a 6 de octubre de 2005

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte íntegra de la presente, concluimos que el licenciado William Marini Román violó los Cánones 18 y 35 de Ética Profesional, en las instancias antes mencionadas según fueron presentados por el Procurador General, al igual que el Criterio general de los deberes del abogado para con los tribunales.

Habida cuenta, sin embargo, que en más de veinte y cinco años en la práctica de la profesión, ésta ha sido la única instancia en que se ha presentado una querella en contra del licenciado William Marini Román, nos limitamos en esta ocasión a censurarle enérgicamente por su conducta. Le advertimos que, en lo sucesivo, debe ser más cuidadoso y diligente en el manejo de sus casos y abstenerse de utilizar cualquier táctica litigiosa que vaya en contra de los principios éticos de la profesión. Le apercibimos que en otra ocasión seremos más severos.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociado señor Fuster Berlingeri y señor Rivera Pérez no intervinieron


                         Aida Ileana Oquendo Graulau
                         Secretaria del Tribunal Supremo