PER CURIAM:
1-I
El Ledo. Josué De León Rodríguez fue admitido al ejer-cicio de la profesión legal el 14 de enero de 1987 y al ejer-cicio de la notaría el 9 de marzo de 1989. El 8 de octubre de 1998 cesó voluntariamente en el ejercicio de la notaría y fue readmitido el 13 de septiembre de 2002.
El procedimiento ético de epígrafe se inició mediante la presentación de una queja ante este Tribunal por la Sra. Judith Suárez Martínez en representación de su madre, doña Manuela Martínez Pepin, el 17 de febrero de 2005. Referimos la queja al Procurador General para investiga-ción e informe. Recibido el informe del Procurador, en el cual concluía que el licenciado De León Rodríguez incurrió en violaciones a los Cánones 9, 18 y 19 del Código de Etica Profesional, 4 L.P.R.A. Ap. IX, cuando representó a la se-ñora Martínez, ordenamos —el 31 de mayo de 2006— que se presentara una querella.
Posteriormente, designamos a la Leda. Crisanta Gonzá-lez Seda, comisionada especial, para que recibiera la prueba correspondiente y nos rindiera un informe. Luego » de los trámites de rigor, el 2 de agosto de 2007 se celebró la vista en su fondo. En la vista se presentó tanto prueba documental como testifical. El 24 de septiembre de 2007, la Comisionada rindió su informe en el que concluyó que que-daron probadas las violaciones éticas imputadas en la querella.
*83 Aclarado el trámite procesal de este procedimiento, pro-cedemos a resumir los hechos que sirven de trasfondo a la querella que pende ante nuestra atención, así como las ale-gaciones de la parte querellada según constan en el in-forme de la Comisionada Especial.
H-1 I — I
La señora Suárez Martínez contrató al querellado para que, a nombre de su señora madre, doña Manuela Martínez Pepín, tramitara una demanda contra Lizardi Auto & Wholesales Corp. (Lizardi Auto) por la compraventa de un vehí-culo de motor usado. La señora Martínez había adquirido el auto en enero de 2002 para acudir a citas médicas, ya que había sido diagnosticada con cáncer. Al momento de la ad-quisición, el marbete del auto tenía fecha de expiración de mayo de ese año. El vendedor le indicó a las señoras Martí-nez y Suárez Martínez que la licencia del auto se le enviaría a la compradora una vez se registrara la venta, y que con dicha licencia se podría tramitar el nuevo marbete.
Expirado el marbete, la señora Suárez hizo gestiones con la compañía para que le entregaran la licencia del auto y adquirir el nuevo marbete. El vendedor la refirió al banco y el banco, a su vez, le indicó que le correspondía al vende-dor y no al banco entregarle la licencia del auto. Como resultado de lo anterior, la señora Martínez tuvo que dejar de utilizar su auto pues, sin marbete, no podía transitar por las vías de rodaje.
Para resolver los problemas suscitados por la compra-venta del auto, la señora Suárez contrató los servicios del licenciado de León en agosto de 2002. Éste le informó que procedía demandar al banco y a la vendedora por negligencia. El acuerdo de servicios profesionales no se re-dujo a escrito. El licenciado De León le informó que habría de presentar una demanda para reclamar una compensa-ción de $110,000 y que sus honorarios ascenderían a 33%. *84 En ese momento le requirió un depósito de $150 para gastos.
El 8 de julio de 2003, el querellado presentó una de-manda sobre daños y peijuicios, incumplimiento de con-trato y rescisión de contrato ante el Tribunal de Primera Instancia, Sala de Bayamón. La demanda se instó a nom-bre dé la señora Martínez Pepin y de la señora Suárez Martínez, su esposo y sus hijas. Los demandados fueron: Lizardi Auto, su compañía aseguradora, Scotia Bank de Puerto Rico, y su compañía aseguradora. En dicho caso se expidió el emplazamiento de Lizardi Auto.
El 14 de agosto de 2003, la codemandada Lizardi Auto presentó en el pleito una moción especial impugnando el emplazamiento. En la moción indicó que había recibido un emplazamiento defectuoso, ya que en éste no se hizo cons-tar información alguna sobre su diligenciamiento. El 22 de agosto de 2003 el foro primario dictó una orden para con-ceder un término de cinco días a la parte demandante para que replicara a la moción presentada. Esta orden se noti-ficó a las partes el 19 de septiembre de 2003. El querellado no compareció, por lo que el 22 de octubre de 2003 el tribunal dictó una nueva orden bajo los mismos términos, conce-diendo esta vez un término de diez días. La orden se notificó el 7 de noviembre. El querellado hizo caso omiso de esta orden.
El 15 de diciembre se notificó una orden similar y en esta ocasión se le concedió un término de veinte días a la parte demandante para que informara sobre el estado del caso. Esta orden se notificó el 8 de enero de 2004.
El 10 de febrero de 2004, Lizardi Auto presentó una moción de desestimación fundamentada en el reiterado in-cumplimiento de la parte demandante con las órdenes dic-tadas por el tribunal.
El 11 de febrero de 2004, el querellante compareció ante el tribunal de instancia en cumplimiento de la orden de agosto de 2003, e indicó que los emplazamientos se diligen- *85 ciaron correctamente y fueron entregádos personalmente, mas no presentó evidencia del diligenciamiento del emplazamiento. En la moción presentada solicitó que se anotara la rebeldía de Lizardi Auto por no haber contestado la demanda.
El 24 de agosto de 2004, el Tribunal de Primera Instan-cia notificó una sentencia parcial de 13 de marzo de 2004, en la que desestimó la demanda en cuanto a Lizardi Auto por insuficiencia del emplazamiento.
Durante estos primeros meses de 2004, la quejosa, en innumerables ocasiones, trató de comunicarse con el licen-ciado De León para inquirir sobre el estado del caso. Todas sus gestiones fueron infructuosas. En abril de 2004, la que-josa, junto a su esposo, logró reunirse con el licenciado De León Rodríguez, quien les indicó que el vendedor del auto se había allanado al reconocer que los demandantes tenían la razón y que habrían de reunirse para finiquitar la controversia.
Aproximadamente un mes más tarde, acudió nueva-mente a la oficina del licenciado De León. En esta ocasión la atendió el Ledo. José Ramírez De León, primo del querellado. El licenciado Ramírez De León le manifestó que había establecido una relación profesional con su primo, y como resultado de ello pasaría a atender los casos de natu-raleza civil que antes manejaba el licenciado De León Rodríguez. El licenciado Ramírez cotejó el expediente del caso y se percató de la sentencia de desestimación,, lo que le informó a la señora Suárez. El licenciado Ramírez se com-prometió con ella a tratar de resolver el asunto. Ramírez dialogó con De León y le informó del serio problema que confrontaba.
Luego de analizar la situación, el licenciado Ramírez de-terminó que el primer paso sería solicitar un relevo de sen-tencia, ya que no podía presentar una moción de reconside-ración ni apelar al Tribunal de Apelaciones porque el tribunal nunca había, adquirido jurisdicción sobre Lizardi *86 Auto al no haberse diligenciado los emplazamientos. Con posterioridad, acudiría al Departamento de Asuntos del Consumidor. Así se lo informó a la señora Suárez, quien aprobó el curso propuesto y suscribió un contrato de servi-cios profesionales con el licenciado Ramírez, prescindiendo de los servicios de De León Rodríguez.
Así las cosas, el 11 octubre de 2004 el tribunal de instan-cia dictó una orden para mostrar causa por la cual no debía desestimarse el caso porque las partes no efectuaron trá-mite alguno durante los anteriores seis meses. El 20 de oc-tubre el licenciado Ramírez De León presentó una moción ante el tribunal asumiendo la representación legal y solici-tando el relevo de sentencia. Poco después, solicitó el desis-timiento voluntario, sin peijuicio, del pleito instado.
Luego de varios trámites procesales que no son necesa-rios relatar, el foro de instancia se reafirmó en su determi-nación de desestimar la demanda en contra de Lizardi Auto por insuficiencia del emplazamiento. De esa determinación no se solicitó revisión ante el foro apelativo intermedio.
El licenciado Ramírez acudió, posteriormente, al foro administrativo donde trató de negociar con los querellados pero la parte aquí querellante no aceptó la oferta que éstos le hicieron. En ese momento, el licenciado Ramírez cesó su representación legal en el caso.
Como resultado de estos hechos, la señora Suárez pre-sentó la queja que nos ocupa contra el licenciado De León. Posteriormente, le remitió una carta a éste en la que le incluyó una reclamación extrajudicial que estimó en $50,000. Ésta hizo gestiones para comunicarse con el licen-ciado De León para manifestarle su interés en una com-pensación económica, no menor de $40,000.
El licenciado De León, durante la vista ante la Comisio-nada Especial, así como en los escritos presentados ante este Tribunal, aceptó los hechos antes relatados. Salvo, que señaló que en efecto se emplazó a Lizardi Auto, pues él es-taba en el auto del emplazador cuando se diligenciaron los *87 emplazamientos. Admitió, sin embargo, que su error fue no notificarle al foro primario del emplazamiento; es decir, que el diligenciamiento no fue entregado.(1) Argüyó en su de-fensa que atravesaba en esos momentos por un mal mo-mento debido a varios problemas personales que lo sumie-ron en una depresión.
III
A. En innumerables ocasiones hemos expresado que los cánones del Código de Ética Profesional tienen como objetivo propiciar que los abogados se desempeñen, profesional y personalmente, acorde con los más altos principios de conducta decorosa para beneficio de la profesión, de la ciudadanía y de las instituciones de justicia del país. In re Pujol Thompson, 171 D.P.R. 683 (2007); In re Izquierdo Stella, 154 D.P.R. 732 (2001).
El Canon 9 del Código de Ética Profesional, supra, impone a los miembros de la profesión legal el deber de observar para con los tribunales una conducta que se caracterice por el respeto y la diligencia. In re Grau Díaz, 154 D.P.R. 70, 75 (2001). La naturaleza de la función del abogado requiere de éste una escrupulosa atención y obediencia a las órdenes que emiten los tribunales, así como a cualquier foro al que se encuentre obligado a comparecer el abogado. In re Hoffman Mouriño, 170 D.P.R. 968 (2007); In re Torres Sepulveda, 160 D.P.R. Ap. (2003). La desatención a dichas órdenes constituye un grave insulto a la autoridad de los tribunales en clara violación al mandato expreso del Canon 9. In re González Carrasquillo, 164 D.P.R. 813 (2005); In re Grau Díaz, supra; In re Maldonado Rivera, *88 147 D.P.R. 380 (1999); In re Otero Fernández, 145 D.P.R. 582 (1998).
Igualmente, el incumplimiento continuo con las órdenes de un tribunal causa demoras irrazonables en el trámite de los casos, afectando así la administración de la justicia. En incontables instancias hemos reiterado que este precepto ético exige de todo abogado el cumplimiento puntual y diligente de las obligaciones asumidas voluntariamente. In re Hoffman Mouriño, supra; In re Claudio Ortiz, 141 D.P.R. 937 (1996); In re Colón Torres, 129 D.P.R. 490 (1991).
No podemos perder de vista que la abogacía cumple una función social de notable importancia por su aportación im-prescindible a la realización de la Justicia. El abogado, además de defensor de su cliente, es colaborador de la Justicia. La buena marcha del proceso judicial del país es responsabilidad ineludible de todo miembro de la profesión legal. In re Marini Román, 165 D.P.R. 801 (2005).
B. Por otro lado, el Canon 18 del Código de Ética Profesional, supra, impone a todo abogado el deber de desempeñarse de forma capaz y diligente al defender los intereses de su cliente, desplegando en cada caso su más profundo saber y habilidad, y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable. In re Hoffman Mouriño, supra. Este deber se incumple cuando se asume una representación legal siendo consciente de que no se puede rendir una labor idónea competente o que no se puede preparar adecuadamente para el caso sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia. In re Meléndez Figueroa, 166 D.P.R. 199 (2005); In re Marini Román, supra.
Reiteradamente hemos establecido que todo miembro de la profesión legal tiene el ineludible deber de defender los intereses de su cliente con el compromiso de emplear la mayor capacidad, lealtad, responsabilidad y efectividad, y la más completa honradez. In re Meléndez Figueroa, supra; *89 In re Martínez Miranda, 160 D.P.R. 263 (2003). Su gestión profesional se debe llevar a cabo aplicando en cada caso sus conocimientos y habilidades, y su desempeño profesional debe ser siempre adecuado, responsable, capaz y efectivo. In re Collazo I, 159 D.P.R. 141 (2003); In re Alonso Santiago, 165 D.P.R. 555 (2005); In re Grau Díaz, supra. “[A]quella actuación negligente que pueda conllevar o, en efecto, conlleve la desestimación o el archivo de un caso, se configura violatoria del Canon 18!.. In re Hoffman Mouriño, supra, pág. 981.
Los abogados, como oficiales del tribunal, tienen una función revestida de gran interés público que genera obligaciones y responsabilidades duales para con sus clientes.y con el tribunal en la administración de la justicia. In re Ortiz Morales, 166 D.P.R. 105 (2005). Ello les impone el deber de asegurarse que sus actuaciones, dentro de cualquier caso en que intervengan, estén encaminadas a lograr que las controversias se resuelvan de una manera justa, rápida y económica. In re Vélez Barlucea, 152 D.P.R. 298 (2000). En consecuencia, este deber de diligencia profesional del abogado es incompatible con la desidia, despreocupación y displicencia. In re Padilla Pérez, 135 D.P.R. 770, 776 (1994).
Como indicamos, el deber de diligencia del abogado requiere salvaguardar el derecho a recurrir de una determinación adversa para el cliente; con lo cual, permitir que expire el término de apelación entraña necesariamente una violación al deber de diligencia que tiene todo abogado. In re Pujol Thompson, supra. El hecho de que el abogado haya indemnizado a su cliente no le exime del trámite disciplinario por infracción al Código de Etica Profesional.
C! Finalmente, el Canon 19 del Código de Ética Profesional, supra, dispone que el abogado debe mantener siempre informado a su cliente de todo asunto importante que surja en el desarrollo del caso que le ha sido encomendado. Véanse: In re Criado Vázquez, 155 D.P.R. *90 436 (2001); In re Acosta Grubb, 119 D.P.R. 595 (1987). He-mos sostenido que dictada una sentencia en un caso que pone fin, parcial o totalmente, a la causa de acción, es obligación del abogado informar a su cliente sobre lo acaecido. Colón Prieto v. Géigel, 115 D.P.R. 232 (1984); In re Cardona Vázquez, 108 D.P.R. 6 (1978).
El Canon 19 establece este deber al margen del deber de diligencia, por lo que se configura como una obligación ética independiente. In re Pujol Thompson, supra. Lo cierto es que, independientemente de las razones o motivaciones que pueda tener un abogado para llevar o no un caso, una vez asume la representación del cliente ante un tribunal, tiene la ineludible e indelegable responsabilidad de llevar a cago esa gestión profesional con el más alto grado de diligencia y competencia posible. In re Pagán Hernández, 141 D.P.R. 113 (1996).
Establecido el marco doctrinal aplicable, pasemos a eva-luar los hechos a la luz del mismo.
IV
Al analizar los hechos previamente reseñamos conclui-mos, al igual que lo hizo ya la Comisionada Especial en su informe, que el licenciado De León Rodríguez incurrió en las violaciones éticas imputadas.
El licenciado De León asumió la representación legal de la señora Martínez y de la señora Suárez Martínez, y no fue sino hasta un año más tarde que presentó la demanda a nombre de sus clientes. Una vez presentada, nunca hizo constar ante el Tribunal de Primera Instancia el diligen-ciamiento del emplazamiento como requiere la Regla 4.8 de Procedimiento Civil, 32 L.P.R.A. Ap. III, por lo que, en su día, se desestimó la reclamación contra Lizardi Auto, uno de los demandados. Tampoco llevó a cabo gestiones para que se emplazara al banco, codemandado en el caso. *91 No sometió interrogatorios a las partes ni llevó a cabo ges-tión alguna en el pleito.
Hizo caso omiso, por meses, de las órdenes del tribunal de que se expresara sobre el emplazamiento defectuoso a Lizardi Auto. Una vez compareció ante el tribunal, no evi-denció el hecho del diligenciamiento del emplazamiento, mas allá de una escueta expresión de que se había efectuado. Además, durante el tiempo que representó le-galmente a las demandantes, se tornó inaccesible a éstas, no respondió a sus llamadas telefónicas, no las mantuvo informadas de lo que ocurría en el pleito y no les informó del resultado adverso de su gestión cuando se archivó el caso por defectos en el emplazamiento. En otras palabras, el licenciado de León Rodríguez se desentendió completa-mente del trámite que instó ante el Tribunal de Primera Instancia en perjuicio de sus representados.
Por otro lado, en ningún momento consideró instar una reclamación administrativa ante el Departamento de Asuntos del Consumidor, como trató de hacer años después el licenciado Ramírez.
Para justificar sus actos, aceptó que “se le imposibilitó atender con la agilidad requerida las referidas órdenes del tribunal, para que contestara la solicitud de desestima-ción, presentada por la parte contraria”. Y le atribuyó su incumplimiento a su “quebrantada condición de salud” y al gran cúmulo de trabajo que tenía. Finalmente, aseveró que tomó medidas correctivas para que dicha situación no se suscitara nuevamente.
No nos satisfacen las explicaciones del licenciado De León. Los hechos reseñados demuestran fehacientemente que éste incurrió en las violaciones éticas establecidas en los Cánones 9, 18 y 19 del Código de Ética Profesional, supra. Con su desidia y claro desconocimiento del Derecho provocó la dilación de los procesos en instancia y, más grave aún, que se desestimara la reclamación contra uno de los codemandados en el pleito. Si éste no podía desem- *92 peñar adecuadamente sus obligaciones para con sus clien-tes —por las razones que fuese— no podía entonces asumir su representación legal. Una vez se asume la representa-ción de un cliente hay que cumplir cabalmente con las obli-gaciones que los cánones del Código de Ética Profesional imponen a todo abogado. Recordemos que incurre en viola-ción ética el abogado que asume una representación legal consciente de qúe no se puede rendir una labor idónea para su cliente.
Por otro lado, si el querellado interesaba que otro abo-gado se hiciera cargo del caso, tenía que consultarlo con sus clientes y renunciar a la representación profesional de éstos, obteniendo el permiso expreso del foro judicial. Ello no ocurrió en este caso. El licenciado de León comenzó a realizar gestiones para que otro abogado asumiera la re-presentación en los casos civiles de sus clientes sin infor-marle a éstas de ello. La señora Suárez Martínez se enteró de que el licenciado Ramírez habría de atender su caso casualmente, cuando acudió a la oficina del licenciado De León para dialogar con él. Aunque ésta determinó desvin-cularse de la relación abogado-cliente que tenía con el li-cenciado De León y proseguir con el licenciado Ramírez, ello no liberaba al primero de su responsabilidad ética de informar a su cliente de las decisiones de importancia que estaba tomando sobre su caso.
Nos resta entonces determinar la sanción disciplinaria que corresponde imponer. En este menester tomamos en cuenta los factores siguientes: la buena reputación del abo-gado en la comunidad, su historial previo, si ésta constituye su primera falta y si ninguna parte ha resultado perjudi-cada, la aceptación de la falta y el sincero arrepentimiento, si se trata de una conducta aislada, el ánimo de lucro que medie de su actuación, el resarcimiento al cliente y cuales-quiera otras consideraciones, ya bien atenuantes o agravan-tes, que medien según los hechos. In re Quiñones Ayala, 165 D.P.R. 138 (2005).
*93 Conforme se desprende del expediente del querellado esta es la primera querella que se insta en su contra. Un testigo declaró en la vista en su fondo que se sentía satisfe-cha con la forma en que el querellado atendió un caso para el cual lo contrató. Expresó su compromiso de hacer el mayor esfuerzo para acatar en el futuro las órdenes de los tribunales.
Por otro lado, en este caso los demandantes en el pleito que atendía el licenciado De León perdieron los derechos que pudiesen tener de reclamarle al vendedor del auto de la señora Martínez Pepín, al desestimarse el pleito contra el codemandado debido a la negligencia, desidia y descono-cimiento del abogado. La parte perfudicada tampoco ha sido resarcida, ya que el querellado indicó que se deprimió cuando la quejosa le informó la cantidad de dinero que in-teresaba como compensación por su pérdida, pero lo cierto es, como concluye la Comisionada Especial, que éste no hizo ninguna oferta a la demandante para resarcirle sus daños. La quejosa, además, incurrió en un pago legal de $500 y vio su crédito afectado.
Por las razones antes expresadas, se suspende inmedia-tamente del ejercicio de la abogacía a Josué De León Ro-dríguez por un periodo de seis meses, contados, a partir de la notificación de esta opinión per curiam.

Se dictará sentencia de conformidad.

 El Sr. Eliezer Esquilín Quiñones, emplazador, prestó una declaración jurada que consta en autos, en la cual señala que el licenciado De León le instruyó a que no presentara el emplazamiento porque el señor Lizardi había hablado con él y le había indicado que iba a resolver la situación.