Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br>Eugenio González Cardona | 2010 TSPR 129<br>179 DPR ____ |

Número del Caso: CP-2004-9

Fecha: 12 de julio de 2010

Abogado de la Parte Querellada:

Por Derecho Propio

Oficina del Procurador General:

Lcda. Noemí Rivera de León
Procuradora General Auxiliar

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Eugenio González Cardona          CP-2004-9          Conducta
                                                     Profesional

PER CURIAM

San Juan, Puerto Rico, a 12 de julio de 2010.

I.

El Sr. Eugenio González Cardona fue admitido al ejercicio de la abogacía el 26 de junio de 1996 y juramentó como notario el 23 de julio del mismo año.

El 17 de noviembre de 2004 el Procurador General de Puerto Rico presentó una querella ante nos en contra del señor González Cardona. Le imputó cuatro cargos, a saber: haber violentado el Canon 9 de Ética Profesional por incumplir en varias ocasiones con las órdenes emitidas por el Tribunal de Primera Instancia, faltando así a su deber de observar el mayor respeto hacia los tribunales;

no haber comparecido a la toma de varias deposiciones autorizadas por el tribunal, dilatando así los procedimientos y faltando al deber de puntualidad que establece el Canon 12; haber abandonado la representación de un cliente sin solicitar la autorización del tribunal para renunciar a tal representación, según lo requiere el Canon 20; e infringir el Canon 35 al incurrir en conducta carente de la sinceridad y la honradez que deben observar los abogados cuando comparecen ante los foros judiciales.

El 27 de diciembre de 2004 González Cardona contestó la querella. Alegó, en esencia, que la querella presentada era "frívola, sin fundamento en derecho y una que representa un desquite o represalia por parte del Procurador General".

El 2 de marzo de 2005 nombramos a un Comisionado Especial para que, en presencia de las partes, recibiera la prueba y nos rindiera el informe correspondiente. La vista quedó pautada para el 5 de mayo de 2005. El querellado solicitó que se pospusiera. El Comisionado entonces señaló la vista para el 29 de junio de 2005. A este segundo señalamiento, el señor González Cardona no compareció ni se excusó. Por tercera ocasión, se señaló la vista para el 6 de octubre de 2005. Llegada esa fecha, el querellado tampoco compareció.

Ante esta situación, el 14 de octubre de 2005 el Comisionado Especial optó por informarnos las reiteradas incomparecencias de González Cardona, las que calificó de injustificadas. Enterados del proceder del querellado, el

18 de noviembre de 2005 le concedimos un término para que mostrara causa por la cual no debía ser separado de inmediato debido a sus injustificadas incomparecencias a los referidos señalamientos de vistas.

El señor González Cardona compareció ante nos doce días después del término que le habíamos concedido. Explicó que sus incomparecencias se debían a que hacía tres años residía en el estado de Florida, donde había mudado su domicilio. Que había dejado un apartado postal en Puerto Rico y un familiar le recogía allí su correspondencia "cada tres o cuatro semanas" y se la enviaba a la Florida. Por ello, adujo que su correspondencia se demoraba "de seis a ocho semanas" en llegarle. En fin, por primera vez nos notificó su dirección postal de Florida y solicitó un término adicional de treinta días para viajar a Puerto Rico y contratar a un abogado para agilizar los procedimientos en este caso.

El 8 de febrero de 2006, habiendo transcurrido más de dos meses de esta última comparecencia, decretamos su suspensión inmediata e indefinida del ejercicio de la abogacía mediante la Opinión Per *Curiam* _In re_ _González_ _Cardona_, 167 D.P.R. 106 (2006). En esa ocasión concluimos que, al ausentarse injustificadamente a las vistas convocadas para dilucidar la querella en su contra —por cuya razón no pudo adjudicarse en los méritos—, y al no notificarnos durante tres años de su cambio de dirección postal o física, tanto de su residencia como de su

oficina, había incumplido con varios deberes medulares que tenía como abogado.

En reacción a su suspensión del ejercicio de la profesión, el 7 de abril de 2006 el Sr. Eugenio González Cardona presentó una *Moción Informativa y en Repudio a Decisión Discriminatoria*. En ésta, de manera irrespetuosa, les imputó parcialidad y prejuicio a algunos de los miembros de este Tribunal. Las expresiones que realizó fueron las siguientes:

> [R]ecientemente este alto foro emitió dos decisiones contra este abogado claramente discriminatorias, obscenas, motivadas políticamente, completamente ilegales, caprichosas y sobretodo que repugnan e[l] sistema civilizado de Derecho como el que la Constitución de los Estados Unidos exige. Son dos decisiones completamente inmorales, faltas de ética y fundamento jurídico que merecen nuestro más decidido repudio y que combatiremos agresivamente hasta las últimas consecuencias en todos los foros federales [y] administrativos tanto en Puerto Rico como en el Estado de la Florida. Obviamente, me refiero a los dos casos de epígrafe,[1] que representaron un claro conflicto ético para la Juez ... que fue juez y parte como pasada Secretaria de Justicia en ambos casos. Sin embargo, ni siquiera se inhibió aunque se le solicitó oportunamente.
>
> Pero primero, quiero expresar todo mi agradecimiento al grupo de jueces que no se dejaron presionar e intimidar por unos jueces claramente prejuiciados políticamente y que actuaron con toda la mala fe del mundo, con ánimo revanchista, ilegal, prepotentes y una actitud contumaz. Estos jueces que así actuaron son los jueces populares ..., la mencionada juez ... y la juez ... Me imagino que mucho tendrán que explicar a las autoridades que investigarán [e]ste caso a la luz de la jurisprudencia misma de este mismo Tribunal, la decisión del Tribunal Apelativo (sic), pero sobre todo de la decisión

---

[1] Los casos a los que el querellado hace referencia son: Pueblo v. González, 167 D.P.R. 350 (2006) (Sentencia) e *In re González Cardona*, 167 D.P.R. 106 (2006).

del juez de primera instancia ..., hoy juez del Tribunal Apelativo (sic). Desafortunadamente para este trío de jueces, una mera lectura al libro de Derecho Penal del profesor Chiesa les hubiese refrescado la memoria respecto a la figura jurídica del fruto del árbol ponzoñoso y le hubiesen devuelto el caso al Procurador General inmediatamente. Y no esperar más de 2 años buscando una mayoría que nunca consiguieron. Obviamente, existieron otras motivaciones que en su día señalaremos y probaremos. Sin embargo, dejemos que sean otras personas quienes pasen juicio sobre [e]stas decisiones repugnantes a la justicia y al buen nombre de este alto foro.

Respecto al caso de Conducta Profesional, que insistimos, está íntimamente relacionado con el otro, he nombrado al Lcdo. Jorge Gordon Menéndez para que presente toda la prueba que poseo para demostrar lo equivocado, la mala fe de la decisión. Sin embargo, mis abogados del Estado de la Florida también tocarán algunos aspectos en conjunto con la intervención indebida de la juez Rodríguez y el Procurador Ramos, además de las querellas que se someterán a nivel federal y la posible intervención del Procurador General del Estado de la Florida, Charlie Crist y las Asociaciones de abogados del Estado que velan contra la discriminación.

Dada la gravedad de toda ésta situación creada por [e]stas decisiones, próximamente estaré viajando a Puerto Rico para reunirme con el Lcdo. Gordon y entregarle toda la documentación disponible de ambos casos. Además, aunque no soy político ni nunca he trabajado con gobierno alguno, he seguido la recomendación y hemos solicitado y estamos solicitando todavía reuniones con el Presidente del Senado Kenneth McClintock, para denunciar lo que está pasando [en] el Tribunal Supremo de manera que el actual puesto vacante lo ocupe un juez con ideología estadista y no dejen pasar otro nombramiento. También denunciaremos y le explicaremos toda ésta situación a[]l Senador Pedro Ros[s]elló y al Lcdo. Romero Barceló.

Examinadas estas expresiones, y en vista de que el querellado se encontraba suspendido, el 1 de mayo de 2006 ordenamos unir al expediente de este caso la referida

Moción para que fuese considerada cuando solicitara reinstalación.

El 17 de marzo de 2008 el señor González Cardona peticionó su reinstalación al ejercicio de la abogacía. En la moción que presentó a esos efectos explicó las razones por las cuales realizó las citadas expresiones. Adujo que nunca entendió porqué este Tribunal no alcanzó una mayoría que lo favoreciera en Pueblo v. González, 167 D.P.R. 350 (2006) (Sentencia). Ello, unido a que decretamos su suspensión indefinida en In re González Cardona, 167 D.P.R. 106 (2006), le hicieron pensar que se este Foro discriminaba en su contra. A esos efectos manifestó: "En aquel momento me encontraba sumamente furioso por la acción viciosa y contumaz del Departamento de Hacienda contra mi persona llevando un caso viciosamente por 10 largos años que estropearon mi vida económica y tuve que dejar la Isla".

Expresó su arrepentimiento y ofreció disculpas a los miembros de este Tribunal por la forma irrespetuosa en que se dirigió en aquella ocasión. Ahora bien, estableció que "comprend[e] que muchas veces la frustración y el fragor en la litigación puede ocasionar que un abogado caiga en esa práctica censurable". En fin, solicitó que por haber transcurrido dos años desde su suspensión —tiempo que estimó suficiente—, y tras considerarse una persona de una excelente reputación que ha aprendido la lección, entendió que era merecedor de que lo reinstalásemos a la práctica de la profesión.

El 26 de marzo de 2008 le notificamos al señor González Cardona que a los fines de considerar su solicitud de reinstalación, informara su disposición a que se tramitase en sus méritos el proceso disciplinario que culminó con su suspensión indefinida del ejercicio de la abogacía. El 2 de abril de 2008 compareció ante nos para informarnos que estaba dispuesto a ventilar en sus méritos el procedimiento disciplinario pendiente. El 9 de mayo de 2008 ordenamos reabrir el procedimiento disciplinario. El 9 de junio de 2008 nombramos a la Hon. Eliadis Orsini Zayas, Ex Juez del Tribunal de Primera Instancia, para que, en presencia de las partes y en calidad de Comisionada Especial, recibiera la prueba y nos rindiese un informe con sus determinaciones de hechos y las recomendaciones que estimase pertinentes.

El 9 de enero de 2009 la Comisionada Especial rindió su Informe. Veamos a continuación los hechos específicos imputados al querellado, los cuales surgen del expediente y de las determinaciones fácticas de la Comisionada Especial.

## II.

El 28 de marzo de 2002, unos abogados de profesión, en calidad de demandantes, presentaron una demanda en solicitud de cobro de dinero por servicios prestados y no compensados. El 2 de julio de 2002 los demandados, por conducto del querellado, el entonces Lcdo. Eugenio González Cardona, contestaron la demanda negando todas las alegaciones esbozadas.

El 12 de julio de 2002, los demandantes presentaron una bien fundamentada solicitud de sentencia sumaria. Alegaron, en síntesis, que los demandados actuaban con temeridad al negar alegaciones cuyos hechos surgían de los documentos que acompañaban la solicitud, pues éstos acreditaban la existencia de la deuda por la suma reclamada e, inclusive, la aceptación de la deuda por la parte demandada. El Tribunal de Primera Instancia les otorgó veinte días a los demandados para que presentaran una oposición a la petición de sentencia sumaria. Transcurrido el término, éstos no comparecieron.

Además, el 22 de julio de 2002 los demandantes le informaron al tribunal que, al examinar el expediente del caso en la Secretaría del Tribunal de Primera Instancia, se percataron que se había contestado la demanda, pero que la parte demandada no le había notificado esa contestación. En esa ocasión, le evidenciaron al tribunal cómo, mediante facsímil dirigido al querellado el 15 de julio de 2002, le solicitaron a éste que le remitiera copia de la contestación a la demanda, pero afirmaron que nunca recibieron respuesta a lo solicitado. Debido a lo anterior, ese mismo 22 de julio el tribunal le ordenó al señor González Cardona que le notificara todos los escritos a los demandantes. Sin embargo, en vista de que el querellado hizo caso omiso de esta orden, pues nunca le envió copia de la referida contestación, los demandantes gestionaron en la Secretaría del Tribunal de Primera Instancia que se le hiciera entrega de una copia de ésta.

El 28 de agosto de 2002 el foro primario declaró con lugar la solicitud de sentencia sumaria imponiéndole a los demandados el pago de la suma de $69,159.61, sin costas e intereses, ni honorarios. La sentencia se notificó el 30 de agosto de 2002. Ahora bien, no es hasta el 4 de septiembre de 2002 que la parte demandada, representada por el querellado, comparece mediante un escueto escrito para oponerse a que se dicte sentencia sumaria. En su oposición argumentó que fue el 20 de agosto de 2002 que recibió la copia de la solicitud de sentencia sumaria. Sin embargo, no acompañó documento acreditativo alguno.

El foro primario denegó la moción en oposición a que se dictase sentencia sumaria. Los demandantes advinieron en conocimiento de que se había presentado la referida oposición cuando recibieron la notificación de tal denegatoria. En vista de ello, los demandantes acuden una vez más al tribunal a informar que el abogado de los demandados, el señor González Cardona, tampoco les había notificado esa alegación, por lo que le solicitaron a ese foro que le impusiera sanciones económicas al señor González Cardona y a los demandados. A esos efectos, el foro primario le ordenó a éstos que comparecieran y explicaran la razón por la cual habían incumplido con su deber de notificar sus alegaciones a las partes según lo exige nuestro ordenamiento jurídico. Nunca comparecieron, por lo que nuevamente incumplieron con las órdenes del tribunal.

Así las cosas, la parte demandada nunca solicitó reconsideración ni recurrió de la aludida sentencia. Advenida final y firme, el 11 de octubre de 2002 los demandantes presentaron sendas mociones mediante las que solicitaron que el tribunal permitiera realizar el descubrimiento de prueba necesario para identificar los bienes de los demandados sobre los cuales se podría ejecutar el dictamen. El 16 de octubre de 2002 el foro primario declaró con lugar la solicitud. A esos efectos, emitió una orden dirigida al codemandado Jorge David Fortis, notificada al señor González Cardona por ser su representante legal, a los fines de que se llevara a cabo una deposición. La deposición quedó programada para el 21 de noviembre de 2002.

El 2 de diciembre de 2002 los demandantes le informaron al foro primario que el codemandado no había comparecido a la deposición, ni tampoco el querellado. También indicaron que habían logrado comunicarse por teléfono con el señor González Cardona, quien les informó que hacía dos meses había renunciado a la representación legal de los demandados y le había entregado el expediente al codemandado señor Fortis. En su comparecencia al tribunal, además, hicieron constar que verificaron en la Secretaría del foro primario de Orocovis si realmente se había presentado la renuncia y fueron informados de que no era correcto. En atención a la información presentada por los demandantes, el 3 de diciembre de 2002 el foro de primera instancia de Orocovis ordenó a los demandados a

comparecer a una deposición en ese mismo tribunal el 18 de febrero de 2003, y que mostraran causa por la cual no debían ser encontrados incursos en desacato. Esta orden se les notificó directamente a los demandados y al querellado a la dirección que a esa fecha tenía en Florida.

El 18 de febrero de 2003, el codemandado señor Fortis se presentó a la toma de la deposición sin su abogado, el señor González Cardona. Ese día el señor Fortis informó que su madre, quien figuraba como la codemandada, había fallecido el 3 de febrero de 2003, por lo que él quedaba como único demandado. También informó que no sabía de su abogado desde hacía varios meses puesto que éste se había mudado al estado de la Florida y había perdido contacto con él. En vista de lo anterior, luego de examinar que en el expediente no constaba una moción de renuncia de representación legal, el Tribunal de Primera Instancia le impuso al querellado sanciones económicas, las cuales todavía no ha pagado. Además, le ordenó mostrar causa por la cual no debía ser encontrado incurso en desacato por su incomparecencia a la deposición pautada para el 21 de noviembre de 2002, así como a la de ese día, 18 de febrero de 2003.

En esa ocasión, el señor Fortis también informó que había acordado con la parte demandante culminar el litigio mediante una estipulación. Los demandantes aceptaron que efectivamente se había preparado un documento de estipulación, el cual habían enviado al querellado para su aprobación, pero que nunca recibieron el documento de

vuelta. Así las cosas, la parte demandante solicitó que se dejara pendiente la aprobación de la estipulación hasta tanto el señor Fortis contratara una nueva representación legal.

El 25 de marzo de 2003 acudieron una vez más al foro primario tanto los demandantes como el señor Fortis, acompañado este último por su nueva representación legal; nuevamente estuvo ausente el querellado. En esta ocasión, el señor Fortis declaró bajo juramento que González Cardona le había informado verbalmente que había renunciado a su representación legal, pero que no le había entregado documento alguno relacionado con el caso. Con el fin de adelantar la solución del pleito, el Tribunal de Primera Instancia procedió a relevar al querellado de la representación legal del señor Fortis y aceptó que se sustituyese por la nueva representación legal. De esta forma culminó el caso, esto es, finalizó de conformidad con la aludida estipulación y sin la participación del señor González Cardona.

Como consecuencia de los reiterados incumplimientos e incomparecencias del querellado en el referido caso de cobro de dinero, el 29 de mayo de 2003 el foro primario emitió una *Resolución y Orden* mediante la cual le impuso sanciones económicas adicionales a las que le había impuesto con anterioridad. Además, le advirtió al señor González Cardona que de no efectuar el pago de la sanción impuesta, referiría el asunto a esta Curia para que iniciásemos el correspondiente procedimiento disciplinario

en su contra. Este dictamen fue notificado a la dirección postal del querellado que en ese momento obraba en el récord del tribunal.

Inconforme con esta Resolución, el 31 de julio de 2003 el querellado presentó una solicitud de reconsideración. Señaló que hacía más de siete meses que el señor Fortis había contratado a otro abogado, por lo que, previo a presentar su renuncia, le había entregado el expediente. Insistió, tal como lo hizo en anteriores comparecencias ante ese tribunal, que el foro primario continuaba enviando las notificaciones a direcciones que habían dejado de ser las suyas. Sin embargo, en el escrito de reconsideración que presentó hacía constar como suya la misma dirección que constaba en el récord del tribunal. De hecho, esa dirección era la misma a la que se le notificó la mencionada *Resolución y Orden* de la cual solicitó reconsideración.

Además, en esa comparecencia anunció que poseía y presentaría prueba que demostraba que había renunciado a la representación legal del señor Fortis, así como la evidencia del error en la dirección a la que se le notificaban las órdenes del tribunal. En esos términos, alegó: "Que poseo pruebas irrefutables de todo lo aquí establecido y en los próximos 10 días estaremos radicando otra Moción con los documentos que establecen los errores en dirección de este Honorable Tribunal; las conversaciones de hace más de 7 meses con el nuevo abogado del señor Fortis as[í] como su nombre, teléfono y

dirección; documentos firmados por el señor Fortis recibiendo el expediente, etc." Sin embargo, el querellado nunca presentó prueba alguna al respecto. Asimismo, la Comisionada Especial en su Informe hace constar que tampoco en los procedimientos ventilados ante ella el querellado presentó prueba pertinente y material para refutar lo alegado en su contra, esto es, la prueba que ofreció, no la presentó en ninguna etapa de los procedimientos disciplinarios.

El 20 de agosto de 2003, el Tribunal de Primera Instancia refirió el asunto ante esta Curia. En la Orden que emitió indicó que González Cardona continuaba sin comparecer, así como tampoco había pagado las sanciones económicas y los gastos de la deposición que no se pudo celebrar debido a su incomparecencia, según le ordenó pagar en el término de diez días dispuestos en la *Resolución y Orden* emitida el 29 de mayo de 2003. Entendió que ese comportamiento era una muestra más de la actitud del querellado de ignorar y menospreciar sus determinaciones y órdenes.

Así las cosas, no es hasta el 5 de septiembre de 2003 que el señor González Cardona comparece ante el foro primario mediante una moción informativa. Solicitó que el Tribunal de Primera Instancia estableciera las determinaciones de hechos y los fundamentos de derecho para las sanciones impuestas. Sin embargo, la *Resolución y Orden* de 29 de mayo de 2003 —mediante la cual se le impusieron las sanciones— fue una muy explícita y

fundamentada, y de la cual González Cardona no recurrió. Además, reiteró que de los autos se desprendía que él había renunciado a la representación legal del señor Fortis hacia bastante tiempo, y que le había entregado el expediente a éste. Igualmente, argumentó una vez más que el foro primario enviaba las notificaciones a direcciones erróneas. No obstante, de los autos se desprendía lo contrario pues precisamente la dirección que hizo constar en esa moción fue la misma a la que el tribunal envió las últimas notificaciones.

El 9 de enero de 2009, la Comisionada Especial emitió el informe sobre la acción disciplinaria que motivó el presente recurso. A base de los hechos relatados, encontró probadas las violaciones éticas imputadas, esto es, concluyó que el señor González Cardona había incurrido en violaciones a los Cánones 9, 12, 20 y 35 de los de Ética Profesional. A la luz de todo lo anterior, procedemos a resolver la solicitud de reinstalación radicada por González Cardona.[2]

### III.

En numerosas ocasiones hemos establecido que todo asunto relacionado con la reglamentación del ejercicio de la profesión legal, lo que incluye la admisión y la separación de sus miembros, es facultad inherente de este

---

[2] Véase, *In re Cuevas Velázquez*, res. el 29 de julio de 2008, 174 D.P.R. ___ (2008), 2008 T.S.P.R. 138.

Tribunal.[3] En el ejercicio de tal autoridad, hemos separado del ejercicio de la profesión legal a aquellos abogados que no se desempeñan conforme a las rigurosas normas de conducta que rigen el quehacer de esta honrosa profesión.

Los Cánones de Ética Profesional contienen las pautas mínimas que deben guiar a los miembros de la clase togada en el ejercicio de su delicada faena.[4] Su propósito es promover en ellos un desempeño profesional y personal acorde con los más altos principios de conducta decorosa.[5] Y es que tal desempeño beneficia tanto a la profesión como a la ciudadanía en general y a las instituciones de justicia del País.[6]

En la búsqueda de esa conducta decorosa, el Canon 9 de Ética Profesional les exige a los miembros de la profesión legal el deber de observar una conducta hacia los tribunales que se caracterice por el mayor respeto.[7] A tales efectos, este Canon dispone que "[e]llo incluye la obligación de desalentar y evitar ataques injustificados o atentados ilícitos contra jueces o contra el buen orden en la administración de la justicia en los tribunales".[8]

---

[3] *In re* Gervitz Carbonell, 162 D.P.R. 665 (2004); *In re* Peña Peña, 153 D.P.R. 642 (2001); *In re* Freytes Mont, 117 D.P.R 11 (1986); *In re* Liceaga, 82 D.P.R. 252 (1961).

[4] *In re* Gervitz Carbonell, *supra*; *In re* Ortiz Brunet, 152 D.P.R. 542 (2000); *In re* Filardi Guzmán, 144 D.P.R. 710 (1998).

[5] *In re* Gervitz Carbonell, *supra*; *In re* Ortiz Brunet, *supra*.

[6] Íd.

[7] 4 L.P.R.A. Ap. IX, C. 9; *In re* Hoffman Mouriño, 170 D.P.R. 968 (2007).

[8] 4 L.P.R.A. Ap. IX, C. 9.

Asimismo, este precepto ético exige de la clase togada el deber de atender pronta y diligentemente las órdenes que emiten los tribunales. Como parte de este deber, se requiere la comparecencia compulsoria de los abogados a los señalamientos judiciales con respecto a la tramitación de las causas de sus clientes.[9] Y es que la desatención a esas órdenes, además de constituir una clara violación al mandato del Canon 9, representa un grave insulto a la autoridad de los tribunales.[10]

El incumplir continuamente con las órdenes de los tribunales provoca retrasos irrazonables en el trámite de los casos, lo que tiene la grave consecuencia de afectar la administración de la justicia.[11] Precisamente, para propiciar la buena administración de la justicia, en numerosas ocasiones hemos reiterado que este precepto ético exige de todo abogado el cumplimiento puntual y diligente de las obligaciones asumidas.[12] Y es que la buena marcha de los procesos judiciales del País es responsabilidad ineludible de todo miembro de la profesión legal.[13] Ello así en vista de que el abogado, además de defensor de su cliente, es colaborador de la justicia.[14]

---

[9] *In re* Vilches López, 170 D.P.R. 793 (2007).

[10] *In re* González Carrasquillo, 164 D.P.R. 813 (2005); *In re* Otero Fernández, 145 D.P.R. 582 (1998).

[11] *In re* Gervitz Carbonell, *supra.*

[12] *In re* Claudio Ortiz, 141 D.P.R. 937 (1996); *In re* Colón Torres, 129 D.P.R. 490 (1991).

[13] *In re* Marini Román, 165 D.P.R. 801 (2005).

[14] *In re* Gervitz Carbonell, *supra.*

Por su parte, pero relacionado con el deber de respeto hacia la autoridad judicial, el Canon 12 exige de la clase togada la obligación de tramitar las causas del cliente de manera puntual y concisa. A esos efectos, establece que:

> Es deber del abogado hacia el tribunal, sus compañeros, las partes y [los] testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución.[15]

De esta forma, el deber de puntualidad y concisión en la tramitación de los casos y en el cumplimiento con los señalamientos judiciales es debido tanto al tribunal como a los compañeros abogados y, sobre todo, al cliente mismo.[16] Esta responsabilidad ética está presente en todas las etapas del litigio e incluye el deber de acatar las órdenes del tribunal.[17]

En este sentido, hemos expresado que "[e]n la tramitación de un pleito, el abogado debe a las cortes el respeto a las órdenes judiciales que le son dirigidas, exigiéndose de él la asistencia puntual y el despliegue de todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en la tramitación y solución de los casos".[18] En otras palabras, que "desatender las órdenes del tribunal y no comparecer a las vistas pautadas

---

[15] 4 L.P.R.A. Ap. IX, C. 12.

[16] *In re* Roldós Matos, 161 D.P.R. 373 (2004).

[17] Íd.; *In re* Soto Colón, 155 D.P.R. 623 (2001).

[18] *In re* Roldós Matos, *supra*, pág. 384.

constituye una falta de respeto al tribunal lo que infringe los deberes éticos consagrados en los cánones 9 y 12 del Código de Ética Profesional".[19]

Por su parte, el Canon 20 dicta que un abogado "no puede ni debe renunciar [a] la representación profesional de su cliente sin obtener primero el permiso del tribunal y debe solicitarlo solamente cuando exista una razón justificada e imprevista para ello".[20] De existir la razón justificada e imprevista para solicitar la renuncia a la representación legal de su cliente, este Canon dispone el procedimiento que debe realizar todo abogado para ello.

En vista de la función fundamental que ejerce, el abogado, antes de renunciar, debe procurar tomar todas las medidas razonables que eviten perjuicios al derecho de su cliente. A esos fines, el Canon 20 provee, a modo de ejemplo, algunas de las medidas necesarias, a saber: notificarle al cliente sobre su renuncia; aconsejarle sobre la necesidad de contratar una nueva representación legal y concederle tiempo para ello; notificarle los términos dispuestos en ley que puedan afectar su derecho o para la presentación de cualquier escrito; y señalarle cualquier otra disposición que haya establecido el tribunal.[21]

De igual forma, dispone este Canon que al advenir efectiva la renuncia del abogado, éste está obligado a

---

[19] *In re* Vilches López, *supra*, pág. 800.

[20] 4 L.P.R.A. Ap. IX, C. 20.

[21] Íd.

entregar el expediente del caso al cliente, así como todo documento relacionado.[22] Asimismo, tendrá que reembolsarle inmediatamente cualquier cantidad que el cliente le haya pagado por adelantado en honorarios por servicios que no se han prestado al momento de concretarse la renuncia.

De otro lado, el Canon 35 exige que la conducta de todo miembro de la profesión legal para con sus representados y sus compañeros abogados, así como para con los tribunales, debe caracterizarse por ser sincera y honrada.[23] A esos efectos, este precepto ético aclara que no es sincero ni honrado utilizar medios inconsistentes con la verdad, ni inducir a error al juzgador mediante artificios o falsa relación de los hechos o del derecho. En vista de ello, el propio canon precisa que al abogado redactar cualquier documento que someta ante la consideración del tribunal, tiene la obligación de ajustarse a la sinceridad de los hechos. Y es que "[l]a verdad es un atributo inseparable del ser abogado, y sin ésta, la profesión jurídica no podría justificar su existencia".[24]

Reiteradamente hemos expresado que un abogado que falta a la verdad infringe el Canon 35, independientemente de los motivos que lo condujeron a incurrir en esa conducta o de que no se hubiera perjudicado a tercero

---

[22] *In re Rivera Ramos*, res. el 13 de abril de 2010, 178 D.P.R. ___ (2010), 2010 T.S.P.R. 53.

[23] 4 L.P.R.A. Ap. IX, C. 35.

[24] *In re Vélez Báez*, res. el 23 de junio de 2009, 176 D.P.R. ___ (2009), 2009 T.S.P.R. 123.

alguno.[25] Por tal razón, todo abogado, en virtud de la confianza en él depositada como miembro de la ilustre clase togada, debe conducirse de forma digna y honorable tanto en la vida privada como en el desempeño de su profesión.[26] En aras de preservar el honor y la dignidad de la profesión, el compromiso del abogado con la verdad es siempre incondicional.[27] Desde esta perspectiva, al adjudicar los méritos de una acción disciplinaria, lo que corresponde evaluar es si la conducta que se le imputa al abogado lo hace indigno de pertenecer a esta honrosa profesión.[28]

IV.

La Regla 14 del Reglamento del Tribunal Supremo establece que le corresponde al Comisionado Especial designado celebrar una vista para recibir la prueba.[29] Como desempeña una función similar a la del juzgador de primera instancia, el Comisionado Especial se encuentra en mejor posición de aquilatar la prueba testifical.[30] En este

---

[25] *In re* Santiago Tirado, res. el 16 de mayo de 2008, 174 D.P.R. __ (2008), 2008 T.S.P.R. 86; *In re* Grau Acosta, res. el 20 de septiembre de 2007, 172 D.P.R. ___ (2007), 2007 T.S.P.R. 170.

[26] *In re* Santiago Tirado, *supra*; *In re* López González, 171 D.P.R. 567 (2007).

[27] *In re* Fernández de Ruiz, 167 D.P.R. 661 (2006).

[28] *In re* Vélez Báez, *supra*; *In re* López González, *supra*.

[29] 4 L.P.R.A. Ap. XXI-A.

[30] *In re* Rivera Lozada, res. el 26 de junio de 2009, 176 D.P.R. ___ (2009), 2009 T.S.P.R. 120; *In re* Gordon Menéndez I, 171 D.P.R. 210 (2007); *In re* Pagán Pagán, 171 D.P.R. 975 (2007).

sentido, sus determinaciones fácticas merecen nuestra mayor deferencia.[31]

Ahora bien, hemos precisado que este Tribunal no está obligado a aceptar el informe que rinde el Comisionado Especial en un procedimiento disciplinario contra un abogado, sino que podemos adoptar, rechazar o modificar tal informe.[32] Sin embargo, nos abstendremos de intervenir con sus determinaciones de hechos salvo que se demuestre pasión, prejuicio, parcialidad o error manifiesto en su apreciación.[33]

Con estos preceptos en mente, y en vista de que no hemos encontrado nada en el expediente que nos anime a intervenir con las determinaciones de hechos de la Comisionada Especial, por lo que la presunción sobre su corrección no ha sido rebatida, adjudiquemos la controversia ante nuestra consideración.

V.

Previo a analizar con especificidad los cargos que se le imputaron al señor González Cardona, resulta pertinente reseñar algunas incidencias acaecidas en la vista celebrada por la Comisionada Especial, las cuales surgen de su Informe, y completan el cuadro fáctico y probatorio de este caso.

Surge del Informe de la Comisionada Especial que la vista final de este caso se celebró el 20 de noviembre de

---

[31] Íd.

[32] *In re* Irizarry Vega, res. el 6 de julio de 2009, 176 D.P.R. ___ (2009), 2009 T.S.P.R. 132.

[33] Íd.

2008, la cual, a petición del querellado, sería una vista evidenciaria ya que éste había anunciado la presentación de tres testigos. Los testigos que anunció eran: el Sr. Eleuterio Pastrana, como testigo de reputación; la Sra. Lydia Díaz Nazario, quien era la secretaria del querellado para la fecha de los hechos objeto de la querella y quien testificaría que le entregó el expediente al señor Fortis; y el propio señor Fortis, quien testificaría que acudió a la oficina del querellado y la secretaría de éste le entregó el expediente. Ahora bien, consignó la Comisionada Especial que esos tres testigos anunciados nunca fueron producidos por el querellado, pues el día de la vista renunció a sus testimonios argumentando que no los pudo localizar debido al tiempo que había transcurrido.

De esta forma, sobre la alegada entrega del expediente al señor Fortis y la fecha en que ésta se produjo, la Comisionada Especial expuso que el querellado no presentó prueba alguna sobre el particular. Además, expresó que el querellado tampoco pudo probar que presentó una moción de renuncia de representación legal conforme exige el Canon 20 de Ética Profesional, ello, a pesar de que durante el proceso insistió que había presentado tal renuncia. Debido a que el señor González Cardona anunció la prueba antes mencionada pero finalmente renunció a ésta sin justificación válida, la Comisionada Especial aplicó la presunción contenida en la Regla 16(5) de las anteriores Reglas de Evidencia —idéntica a la actual Regla

304(5)— respecto a que "toda evidencia voluntariamente suprimida resultará adversa si se ofreciere".[34]

Consignado lo anterior, resulta pertinente recordar la forma en que se inició este procedimiento de conducta profesional. Comenzó con la emisión de una *Resolución y Orden* por parte del Hon. Nelson Javier Canabal, Juez del Tribunal de Primera Instancia, Sala de Orocovis, quien presidía un caso sobre cobro de dinero en el que el querellado era el abogado de la parte demandada. El mencionado dictamen tuvo el objetivo de consignar los acontecimientos procesales acaecidos en el referido caso a los fines de imponerle sanciones económicas al entonces licenciado González Cardona debido a su reiterado incumplimiento con las órdenes de ese tribunal. Incluso, en ese escrito se le advirtió que de no efectuar el pago de las sanciones económicas impuestas, el asunto sería referido ante esta Curia a los efectos de iniciar un procedimiento disciplinario en su contra. En vista de que el querellado incumplió con este dictamen, el Hon. Nelson Javier Canabal emitió una Orden a los únicos efectos de

---

[34] 32 L.P.R.A. Ap. IV R.16(5). Téngase en cuenta que cuando la Regla 1 de las anteriores Reglas de Evidencia dictaba que éstas eran "aplicables en todas las salas del Tribunal General de Justicia del Estado Libre Asociado de Puerto Rico en procedimientos de naturaleza civil y criminal", se entendía que ello incluía cualquier acción judicial celebrada ante un comisionado especial. Ahora bien, las Reglas de Evidencia vigentes especifican —Regla 103— que éstas son de aplicación "en los procedimientos ante el Tribunal Supremo". En vista de ello, los procedimientos disciplinarios llevados a cabo por este Tribunal, incluso cuando la dirección de la vista se haya delegado a un comisionado especial, están sujetos a lo que dispongan las Reglas de Evidencia —incluida la Regla 304; Presunciones específicas— siempre que aplicarlas no conflija con las disposiciones de nuestro Reglamento.

remitirnos copia de la citada *Resolución y Orden* para que procediéramos con la acción que estimásemos conveniente.

Con el beneficio del referido realizado por el mencionado Juez, referimos el asunto a la Oficina del Procurador General para la correspondiente investigación e informe. En cumplimiento con lo ordenado, el Procurador General rindió su informe y, previo a los trámites de rigor, presentó escrito de querella imputándole cuatro cargos por alegadas violaciones a los Cánones 9, 12, 20 y 35 de los de Ética Profesional. En este sentido, no debe albergar duda en cuanto a que el contenido de los cargos imputados y, en consecuencia, el presente procedimiento, se inicia por motivo de un referido que hace un Juez del Tribunal de Primera Instancia mediante el cual enumera una serie de incumplimientos por parte del querellado para con las partes litigantes y para con el propio foro primario en un caso ante su consideración.

La serie de incumplimientos ya han sido reseñados. La Comisionada Especial estableció como hecho cierto que el querellado hizo caso omiso a la orden del foro primario en cuanto a que le notificara a los demandantes todos los escritos que había presentado. Ello así, en vista de que los demandantes le informaron al tribunal que, al examinar el expediente del caso en la Secretaría del Tribunal de Primera Instancia de Orocovis se percataron que se había contestado la demanda, pero que la parte demandada no le había notificado esa contestación. Más aún, con posterioridad a este requerimiento del tribunal, el

querellado presentó un escrito para oponerse a la solicitud de los demandantes para que se dictase sentencia sumaria incurriendo nuevamente en la práctica de no notificar esa alegación a los demandantes. Enterado el tribunal de este incumplimiento, ordenó al querellado que compareciera y explicara la razón por la cual había incumplido nuevamente con el deber de notificar sus alegaciones, pero éste tampoco cumplió con esta orden pues no compareció en esos términos ni notificó el referido escrito. La desatención a esas órdenes, además de constituir una clara violación al mandato del Canon 9, representa un grave insulto a la autoridad de los tribunales.[35]

Lo anterior, unido a las expresiones irrespetuosas, ofensivas y amenazantes que realizó el querellado en la *Moción Informativa y en Repudio a Decisión Discriminatoria* que presentó en reacción a su suspensión indefinida del ejercicio de la profesión en *In re* González Cardona, *supra*, y mediante la cual les imputó parcialidad y prejuicio a algunos de los miembros de este Tribunal, no nos deja ninguna duda de que el querellado violentó la pauta ética establecida en el Canon 9 de Ética Profesional. Así concluimos toda vez que la citada Moción y la *Resolución y Orden* emitida por el foro primario detallando la serie de incumplimientos en que éste incurrió —de la cual el querellado no recurrió ni tampoco presentó prueba en contrario ante la Comisionada

---

[35] *In re* González Carrasquillo, *supra*; *In re* Otero Fernández, *supra*.

Especial—, representa una prueba clara y convincente de que el querellado faltó así a su deber de observar el mayor respeto hacia los tribunales.

No nos satisfacen las explicaciones que ofrece el querellado sobre las razones por las cuales realizó las desafortunadas expresiones en contra de algunos de los miembros de esta Curia, pues no estamos de acuerdo con su afirmación de que "muchas veces la frustración y el fragor en la litigación puede ocasionar que un abogado caiga en esa práctica censurable". Aún cuando reconocemos que hay instancias en que a los abogados les causa desazón las determinaciones adversas que puedan hacer los tribunales, hemos expresado que ello no es licencia para cuestionar la dignidad, honestidad y ecuanimidad de los miembros de la judicatura.[36] Los abogados, sin exclusión ninguna, están obligados en todo momento por el Canon 9 a "desalentar y evitar ataques injustificados o atentados ilícitos contra los jueces o contra el buen orden en la administración de la justicia en los tribunales".[37]

Relacionado con el deber de respeto hacia la autoridad judicial, podemos concluir que el querellado no tramitó las causas de sus clientes de manera puntual y concisa contraviniendo así los postulados del Canon 12. Con sus constantes incomparecencias a la toma de las deposiciones autorizadas por el tribunal en la etapa de ejecución de sentencia, dilató los procedimientos y faltó

---

[36] *In re* Crespo Enríquez, 147 D.P.R. 656 (1999).

[37] 4 L.P.R.A. Ap. IX C. 9.

al deber de puntualidad que establece el Canon 12. En otras palabras, el señor González Cardona no desplegó todas las diligencias necesarias para asegurar que no se causaran dilaciones indebidas en la tramitación y la solución del litigio entablado contra su cliente.

Al igual que la Comisionada Especial, concluimos que el querellado faltó al deber de concisión en la tramitación del caso pues las continuas incomparecencias a las deposiciones autorizadas por el tribunal obligó que se tuvieran que emitir nuevas órdenes duplicando así los esfuerzos del foro primario, lo que no era necesario efectuar a no ser que el querellado hubiese cumplido con el deber ético que le impone el Canon 12. En fin, al desatender las órdenes del Tribunal de Primera Instancia y no comparecer a las deposiciones pautadas, constituye una falta de respeto al tribunal, lo que infringe los deberes éticos consagrados en los Cánones 9 y 12 del Código de Ética Profesional.

En cuanto al tercer cargo imputado en la querella, la Comisionada Especial concluyó que el señor González Cardona incurrió en conducta violatoria del Canon 20 debido a que se desligó y se desentendió del caso dejando indefenso a su cliente sin solicitar su renuncia conforme lo exige este precepto ético. Fueron los demandantes quienes le informaron al tribunal que habían logrado comunicarse por teléfono con el querellado y éste les comunicó que había renunciado a la representación legal del señor Fortis y que le había entregado el expediente.

Sin embargo, el señor Fortis, por su parte, compareció al tribunal y declaró bajo juramento que el querellado le había informado verbalmente que había renunciado a su representación legal pero que nunca le entregó documento alguno relacionado con el caso. Así las cosas, tras confirmar que del expediente no constaba una moción de renuncia de representación legal, el foro primario le impuso al querellado sanciones económicas, las cuales no ha pagado.

De esta forma quedó probado que el querellado infringió lo dispuesto en el Canon 20 pues un abogado "no puede ni debe renunciar [a] la representación profesional de su cliente sin obtener primero el permiso del tribunal y debe solicitarlo solamente cuando exista una razón justificada e imprevista para ello".[38] El señor González Cardona, a pesar de que anunció prueba al respecto, nunca probó que solicitó permiso al tribunal para hacer efectiva su renuncia y que le notificó a su representado sobre ésta, así como tampoco le aconsejó a éste sobre la necesidad de contratar una nueva representación legal ni le notificó sobre los señalamientos establecidos por el tribunal, todo ello, en contravención a los postulados del mencionado precepto ético. Asimismo, infringió el Canon 20 en la medida en que de la prueba se desprende que no le hizo entrega del expediente al señor Fortis cuando debía, cuestión que, a pesar que alegó que

---

[38] 4 L.P.R.A. Ap. IX, C. 20.

probaría que sí se lo había entregado, realmente nunca pudo demostrarlo.

En este punto, conviene transcribir las determinaciones que realizó la Comisionada Especial sobre este particular:

> [S]urge por expresiones del querellado, que no se han rebatido, que él había abandonado la jurisdicción y que tuvo la conversación con los demandantes informando que había renunciado y había entregado el expediente al Sr. Fortis dos meses antes del 20 de noviembre de 2002. Entonces tenemos que concluir que contradictoriamente —según su versión y siguiendo la misma— estaría el querellado realizando gestiones en relación a clientes que ya no representaba cuando presentó el escrito en oposición a la solicitud de sentencia sumaria. Recuérdese que la moción de sentencia sumaria se declaró con lugar el 28 de agosto de 2002, notificada la sentencia el 30 de agosto del mismo año 2002; pero el abogado querellado presentó la oposición a la solicitud de sentencia sumaria el 4 de septiembre de 2002 y la moción de sentencia sumaria se había presentado desde el 12 de julio de 2002.
>
> .   .   .   .   .   .   .   .
>
> Sobre este tema el querellado ha insistido en que entregó el expediente al Sr. Fortis el 27 de agosto de 2002 y que presentó una moción de renuncia desde esa fecha, aunque no posee prueba alguna para sostenerlo y en los autos del caso B4CI2002-0037 no obra moción de renuncia de esa fecha; la única moción de renuncia que obra en el expediente tiene fecha de 11 de marzo de 2003; pero hay que resaltar que la misma fue presentada luego de haber el abogado incumplido órdenes del tribunal y habérsele impuesto sanciones económicas que a esta fecha no ha satisfecho. El querellado nunca recurrió de las determinaciones tomadas en su contra en instancia. Además, en cuanto a la prueba anunciada en estos procedimientos por el querellado, al no presentarla el querellado, le aplicamos la presunción de que esa prueba le resultaba adversa.

Es de advertir que los argumentos conflictivos y en ocasiones increíbles de González Cardona no le merecieron crédito a la Comisionada Especial, quien tuvo ante sí toda la prueba presentada por las partes. Tampoco a nosotros nos persuaden; más bien nos llevan a concluir que en los procedimientos ante el Tribunal de Primera Instancia, así como en la tramitación del presente proceso disciplinario, el querellado brindó información falsa o imprecisa con la intención de evadir las consecuencias de sus actos.

Como vemos, el querellado faltó a la verdad infringiendo así el Canon 35. Su conducta para con sus compañeros abogados y para con el tribunal, así como para con la Comisionada Especial, no se caracterizó por ser sincera y honrada. Engañó a sus compañeros abogados cuando, previo al 2 de diciembre de 2002, les informó vía telefónica que hacía dos meses había renunciado a la representación legal de los demandados y le había entregado el expediente al señor Fortis.

Para con el tribunal, utilizó medios inconsistentes con la verdad al realizar una falsa relación de los hechos cuando el 31 de julio de 2003, en reacción a la *Resolución y Orden* emitida por el foro primario, solicitó reconsideración de ésta manifestando que hacía más de siete meses que el señor Fortis había contratado a otro abogado, por lo que había renunciado a su representación legal y le había entregado el expediente. Incluso, indujo a error al tribunal al insistir en varias ocasiones que

sus incomparecencias se debían a que se le enviaban los pronunciamientos del tribunal a direcciones que no eran la suya, cuando, precisamente, en el escrito de reconsideración que presentó hacía constar como suya la misma dirección que constaba en el récord del tribunal, la cual era idéntica a la que se le notificó la *Resolución y Orden* de la cual solicitó reconsideración. En este sentido, contravino lo dispuesto en el Canon 35 al someter ante la consideración del tribunal un documento que no se ajustó a la sinceridad de los hechos.

Respecto al procedimiento disciplinario seguido ante la Comisionada Especial, ésta concluyó que el querellado "presentó información no ajustada a la realidad para justificar su conducta". Indicó que el querellado no había sido sincero ni honrado al informarle que para el 27 de agosto de 2002 había enviado por correo su moción de renuncia y le había entregado el expediente al señor Fortis porque éste ya había contratado otro abogado, cuando en realidad, para el 18 de febrero de 2003, no había presentado solicitud de renuncia al tribunal ya que la presentó el 11 de marzo de 2003. Ante esta situación, la Comisionada Especial le concedió la oportunidad de contradecir lo anterior mediante algún recibo que acreditara la entrega del expediente, o algún documento o recibo que acreditara el envío de las mociones de renuncia que él alegaba haber enviado a tiempo, pero el querellado le respondió que no tenía manera de probarlo.

Así configurado el caso que le correspondió atender a la Comisionada Especial, ésta concluyó en su Informe:

> [N]os llama la atención la postura y conducta reiterada una y otra vez del querellado a los efectos de que no cometió falta alguna; que cumplió con las normas y procedimientos en instancia; y su comprobada conducta de anunciar gestiones o poseer prueba que presentará para derrotar lo imputado lo que nunca hace o provee.
>
> Se detecta en el querellado tener él un convencimiento serio de que todos están contra él, haciendo abstracción de los hechos tal cual comprobadamente ocurrieron. El querellado hace caso omiso de la naturaleza real de todos estos incidentes que lo involucran a él.
>
> A la fecha de la vista del 20 de noviembre de 2008 el querellado s[ó]lo recordaba que se le habían impuesto $100 por concepto de sanciones y a preguntas contestó que no las había pagado por ser improcedentes, ya que él renunció en tiempo, aunque aceptó que se fue a vivir para Estados Unidos. Su repetida defensa es que aunque acepta [que] se enviaban las notificaciones del tribunal no le llegaban porque se enviaban a direcciones erróneas y porque él no las recibía en tiempo porque estaba en Estados Unidos. Recuérdese que es la teoría del querellado que esa persona Jorge Fortis probablemente por desquite, o por cualquier otra razón fue y dijo al tribunal que él le renunció a los casos porque no le pagó ningún dinero, aunque este dato no se ajusta a la realidad según establecimos y lo visualiza como un querellante aunque no lo es; ya que este asunto llegó ante este foro por un referido que hizo un juez del [T]ribunal de [P]rimera [I]nstancia.

Ciertamente, el comportamiento observado por González Cardona no estuvo a la altura de la honrosa profesión que ostentó y que ahora intenta reinsertarse. Mucho menos actuó como ministro y buen funcionario de la judicatura. No albergamos duda alguna de que su conducta violentó de manera inaceptable el deber de todo abogado

de cooperar en la compartida e indivisible encomienda de lograr la verdad y ver cumplida la justicia. Sus actuaciones no sólo laceraron el honor y la dignidad de la profesión, sino que violentaron los preceptos básicos que rigen a todos los miembros de la clase togada, esto es, obvió su obligación de actuar con el más alto sentido de compromiso y respeto hacia sus compañeros de la profesión, los tribunales y sus clientes.

Luego de haber examinado el Informe de la Comisionada Especial, y en vista de que González Cardona continúa tratando de justificar su conducta con argumentos inmeritorios e información que no se ajusta a la realidad, resolvemos que no procede reinstalarle al ejercicio de la abogacía. Como hemos visto, el querellado no sólo realizó manifestaciones ofensivas en contra de algunos de los miembros de este Tribunal, sino que perpetró un incumplimiento reiterado con las órdenes de los tribunales —incluyendo nuestras órdenes durante el procedimiento disciplinario que ahora culmina—, mostró una clara dejadez y menosprecio en la tramitación del caso que le fue encomendado, y su falta de diligencia, honradez y sinceridad continúa patente. Estamos impedidos de avalar su conducta. Lo contrario resultaría detrimental para la profesión pues en forma alguna enaltece la toga.

VI.

Por los fundamentos que anteceden, procede denegar la solicitud de reinstalación al ejercicio de la abogacía del Sr. Eugenio González Cardona.

Se dictara Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Eugenio González Cardona          CP-2004-9          Conducta
                                                     Profesional

SENTENCIA

San Juan, Puerto Rico, a 12 de julio de 2010.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se deniega la solicitud de reinstalación al ejercicio de la abogacía del Sr. Eugenio González Cardona.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no interviene. La Jueza Asociada señora Fiol Matta y la Juez Asociada señora Rodríguez Rodríguez no intervinieron.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo